# EXHIBIT D

**AMENDED & RESTATED EXECUTIVE NONQUALIFIED EXCESS PLAN OF SVB SECURITIES LLC (Effective as of April 14, 2023)**

**PREAMBLE**

SVB Securities LLC, a limited liability company organized in the State of Delaware with its principal offices in Boston, Massachusetts (formerly known as SVB Leerink LLC and previously Leerink Partners LLC, and referred to herein as the "Company"), hereby adopts this Amended & Restated Executive Nonqualified Excess Plan of SVB Securities LLC (the "Plan"), effective as of the date set forth above (the "Effective Date") governing awards for the 2021 and later Performance Periods (as defined below) which are allocated in 2022 and later. The Plan is established in order to encourage key executives of the Company to achieve higher levels of performance and to remain in the service of the Company.

**ARTICLE 1**

**DEFINITIONS**

1.1 "Affiliate" means an entity under common control (as defined in Section 414(b) or (c) of the Code) with the Company, and any other entity that the Committee determines, at its discretion, shall be considered to be an "Affiliate."

1.2 "Award" means the deferred portion of a Participant's annual incentive award for a Performance Period as determined by the Committee pursuant to Section 3.1.

1.3 "Beneficiary" means the person or persons designated by a Participant in the manner prescribed by the Committee to receive any benefits payable on the Participant's death, or, if no person has been designated as the Participant's Beneficiary, Beneficiary means the Participant's estate.

1.4 "Cause" means: (a) conviction of (or pleading *nolo contendere* to) theft, fraud, deceit, embezzlement or willful misappropriation of funds or property of SVB, the Company (or any of its affiliated companies); (b) any dishonesty, moral turpitude or willful misconduct relating to SVB, the Company (or any of its affiliated companies), or shareholders, or any of their businesses or any action or omission that the Participant knows or should know will have a material adverse effect on SVB, the Company or any of its affiliated companies, or their businesses, including, without limitation, gross negligence or continuous nonfeasance with regard to the Participant's duties; (c) conviction of (or pleading *nolo contendere* to) a felony that reasonably could be deemed to affect the fitness of the participant for his or her position or is likely to adversely affect SVB's, the Company's (or any of its affiliated companies') reputation or business; (d) becoming permanently enjoined by any bank regulatory authority, the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), or any other governmental, self-regulatory organization, or industry regulatory authority from working in the investment advisory, securities, broker-dealer, or distribution industry or other industry in which SVB, the Company (or any of its affiliated companies) engages, after any and all appeal periods have expired; (e) any willful and substantial violation by the Participant of any

term of the Participant's employment or similar agreement with SVB, the Company (or any of its affiliated companies) or the Participant's willful or knowing failure to perform the material duties of his or her position including, by way of example and not of limitation, the failure or refusal to follow instructions reasonably given by the Participant's superiors in the course of employment, if any, after written notice from the Company and a reasonable opportunity (and, in any event, at least 30 days) to cure; or (f) willful and substantial violation by the Participant of the code of ethics, compliance manual or general policies of SVB, the Company (or any of its affiliated companies), which violation is determined by the Committee (or similar governing body of any affiliated company or subsidiary of the Company employing the Participant) likely to be materially harmful to SVB, the Company, its affiliated companies, or their respective businesses. Whether Cause exists under this Agreement shall be determined by the Committee, in its sole discretion.

1.5 "Change in Control Event" shall mean the consummation of a transaction, whether in a single transaction or in a series of related transactions that are consummated contemporaneously (or consummated pursuant to contemporaneous agreements), with any other person or group of related persons on an arm's length basis, pursuant to which such person or group of related persons (a) acquire (whether by merger, purchase of equity, recapitalization, reorganization, redemption, issuance of equity or otherwise) more than 50 percent of the then outstanding voting units (directly or through the acquisition of shares of a blocker) or (b) acquire assets constituting all or substantially all of the assets of the Company and its subsidiaries on a consolidated basis (directly or through the acquisition of shares of a blocker); provided that in no event shall a Change in Control Event be deemed to include any transaction effected for the purpose of (x) changing, directly or indirectly, the form of organization or the organizational structure of the Company or any of its Subsidiaries or (y) contributing assets or equity securities to entities controlled by the Company; provided that the event is properly characterized as a "Change in Control Event" pursuant to applicable provisions of Code Section 409A regulations promulgated thereunder.

1.6 "Claimant" means a Participant or Beneficiary who makes a claim for a benefit under the Plan.

1.7 "Code" means the Internal Revenue Code of 1986, as amended, and includes any official regulations or guidance issued by Treasury or the IRS.

1.8 "Committee" means the committee comprised of the Company's Chief Executive Officer, Chief Administrative Officer and Head of Human Resources, or, in the event one or more of such individuals is unable to serve as a member of the Committee, the remaining member or members of the Committee can appoint a replacement or replacements, or the Member of the Company may appoint replacements to serve as members of the Committee or may, itself, serve as the Committee.

1.9 "Employer Allocation" means the amount allocated by the Committee to the Plan Account of a Participant (which may be set up as creating a separate subaccount for purposes of vesting or distributions) as determined at the discretion of the Committee for a particular Plan Year, as described in Section 3.2.

1.10 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended. A reference to a Section of ERISA shall include a reference to any regulations or other guidance issued under that Section.

1.11 "Good Reason" means the Participant's resignation from the Company and its Affiliates that occurs on account of (a) a material diminution in the Participant's base salary; (b) a material diminution in the Participant's duties and/or responsibilities with the Company and its Affiliates in effect immediately prior to such reduction; (c) a relocation of the Participant's principal place of employment by more than 25 miles without the Participant's consent; (d) a material breach by the Company, SVB and any of their Affiliates of any agreement between SVB, the Company (or any of Affiliates) and the Participant, including the failure to pay any amounts due under any such agreement, or (e) (A) SVB's failure to set the Earned Compensation Ratio (as defined in the Merger Agreement) at least at 60% for each Performance Period beginning with 2019 and continuing for each subsequent year up to and including 2023 or (B) SVB taking any action to prohibit the pay out by Holdings or any of its subsidiaries of an Earned Compensation Ratio of at least 60% during the Performance Period or taking any other action to interfere with the pay out by Holdings of an Earned Compensation Ratio of at least 60% during the Performance Period that actually results in an Earned Compensation Ratio of less than 60% for any calendar year during the Performance Period, in the case of each of (A) or (B), without the prior written consent of the Employee Representatives (as defined in the Merger Agreement) in accordance with the Merger Agreement. In each case, before the Participant resigns for Good Reason, the Participant must have provided written notice to the Committee of his or her intent to resign for Good Reason and a description of the conditions in reasonable detail that the Participant contends constitute Good Reason, and the Company (or its parent or Affiliates) shall have failed to cure such conditions within 45 days of such notice, unless such conditions are not curable.

1.12 "Holdings" means SVB Securities Holdings LLC.

1.13 "Involuntary Termination of Employment" means (a) the involuntary termination of employment with the Company or its Affiliates (other than for Cause) at any time, or (b) a Participant's resignation for Good Reason that becomes effective during the 24-month period following a Change in Control Event.

1.14 "Merger Agreement" means the Agreement and Plan of Merger dated as of November 13, 2018 among SVB, Holdings, and certain other parties.

1.15 "Participant" means any employee designated by the Committee as a Participant and all persons previously designated as Participants.

1.16 "Participating Employer" means the Company and any Affiliate that the Committee designates for participation in the Plan.

1.17 "Performance Period" means each calendar year beginning with 2019 and continuing for each subsequent year during which the Plan is in effect.

1.18 "Plan Account" means a bookkeeping account established for a Participant to record the amount credited as a result of Employer Allocations from time to time, as adjusted for

distributions and investment gains and losses, as provided for under the Plan. Each Plan Account may have subaccounts that are tracked for purposes of separately tracking the extent to which a Participant's Plan Account becomes Vested or is to be distributed under applicable provisions of the Plan.

1.19 "Plan Year" means the calendar year.

1.20 "Retirement" means attainment of (a) age 55, and (b) age plus years of service equal to 70, unless otherwise provided in any employment agreement between the Participant and the Company, Holdings and/or SVB.

1.21 "Separation from Service" shall mean any event that is properly characterized as a "separation from service" pursuant to applicable provisions of regulations promulgated pursuant to Code Section 409A. All references herein to a termination of employment or any similar phrase shall in all cases be interpreted as referring to a Separation from Service and shall be interpreted in all regards consistent with the requirements of Code Section 409A.

1.22 "SVB" means SVB Financial Group.

1.23 "Total and Permanent Disability" means a condition which has qualified the Participant to receive income replacement payments for at least three months under the long-term disability plan maintained by the Participating Employer employing the Participant and similarly situated employees, or, in the absence of such a plan, as determined by the Committee, provided, however, that the condition also satisfies the requirements of Section 409A(a)(2)(C) of the Code.

1.24 "Vested" means the amount or percentage of a Participant's Plan Account that are not generally forfeitable on a separation from service pursuant to applicable provision of the Plan.

1.25 "Year of Service" means each Plan Year; provided the Participant has been and remains employed on a full-time basis by a Participating Employer for the entire Plan Year. In connection with an off-cycle award, the Committee may modify the requirements to earn a Year of Service.

**ARTICLE 2**

**PARTICIPATION**

2.1 Commencement of Participation

An Employee shall become a Participant as of the date he or she is designated for participation by the Committee and shall remain as a Participant in the Plan until his or her benefits have been paid in full or have been forfeited, pursuant to the terms of the Plan.

## ARTICLE 3

## AWARDS, ACCOUNT CREDITS AND ADJUSTMENTS

3.1 Awards

A Participant may be awarded an Award with respect to a Performance Year as determined by the Committee. The determination as to the amount of an Award and the determination of the date of the Award shall be at the discretion of the Committee, based on such facts and circumstances as the Committee deems to be relevant for this purpose. Awards shall be settled in cash, through the making of an Employer Allocation to a Participant's Plan Account pursuant to Section 3.2. Nothing contained herein is intended to affect the terms of any SVB restricted stock units issued under the applicable SVB equity plan prior to March 31, 2023.

3.2 Employer Allocations

A Participant's Plan Account shall be credited with an amount equal to the Employer Allocation portion of any Award. The determination of the date as of which such Employer Allocation is to be credited to a Participant's Plan Account shall be at the discretion of the Committee.

3.3 Earnings Credits

A Participant's Plan Account shall be credited or debited with adjustments for earnings at such time or times as the Committee determines, which may be based on daily valuations or on such other basis as the Committee establishes from time to time. In general, the adjustment for earnings shall be determined as though the Plan Account were invested in such investment option or options as are made available by the Committee for these purposes from time to time, with appropriate adjustments for distributions and forfeitures. Adjustments under this Section 3.3 shall continue until such time as a complete distribution of the Participant's Plan Account is made. The permitted investment options and rules and regulations regarding how a Participant may make or change his or her investment elections shall be established by the Committee at its discretion and may be modified by the Committee, at its discretion, from time to time. Nothing herein shall require that any funds be invested in any particular investments, nor shall any Participant have any rights to any funds or investments held by the Company, whether or not such funds have been set aside for the purpose of funding payment under the Plan, except as a general, unsecured creditor of the Company.

3.4 [Reserved]

## ARTICLE 4

## VESTING

4.1 Service-Based Vesting

Unless earlier Vested pursuant to Sections 4.2 through 4.4, a Participant shall vest in the portion of his or her Plan Account attributable to an Employer Allocation on the basis of the

Participant's Years of Service in which, or subsequent to which, an Employer Allocation is made, in accordance with the schedule set forth below. Participants will be credited with a Year of Service on each February 28th following the completion of the initial Plan Year, and the Participant must be actively employed on such date in order to receive vesting credit for such Plan Year.

| **Years of Service** | **Vesting Percentage** |
|---|---:|
| Less than One | 0% |
| One but less than Two | 33.34% |
| Two but less than Three | 66.67% |
| Three or more | 100% |

For example, unless earlier Vested pursuant to Sections 4.2 through 4.4, in the case of a Participant receiving an initial Employer Allocation on or about February 28, 2022 with respect to the 2021 Performance Period, the portion of a Participant's Plan Account attributable to such Employer Allocation shall vest under this Section 4.1 as follows: 33.34% on February 28, 2023 and 33.33% each subsequent February 28th through February 28, 2025, but only if the Participant remains actively employed on such February 28th. For purposes of determining the portion of a Participant's Plan Account pursuant to this Section 4.1, calculations shall be made by treating the account as though amounts distributed pursuant to Section 5.1, below, remained as part of the Plan Account (with projected earnings).

4.2 Vesting upon Eligibility for Retirement

Notwithstanding any other provision of the Plan, a Participant shall become 100% Vested in his or her Plan Account upon eligibility for Retirement while employed by the Company or an Affiliate.

4.3 Vesting upon Death or Total and Permanent Disability

Notwithstanding any other provision of the Plan, a Participant shall become 100% Vested in his or her Plan Account upon his or her death while employed by the Company or an Affiliate or his or her suffering a Total and Permanent Disability while employed by the Company or an Affiliate.

4.4 Vesting upon an Involuntary Termination

Notwithstanding any other provision of the Plan, a Participant shall become 100% Vested in his or her Plan Account upon his or her Involuntary Termination of Employment.

4.5 Forfeiture upon Termination for Cause or Resignation

If a Participant's employment with his or her Participating Employer is terminated for Cause or the Participant resigns or otherwise voluntarily terminates his or her employment (except as provided in Section 4.4), the portion of such Participant's Plan Account that is not Vested pursuant to applicable provisions of the Plan shall be immediately forfeited. For the avoidance of doubt, if a Participant's employment is terminated as a result of one of the incidents or events described in Sections 4.2, 4.3, or 4.4, those Sections shall be given effect before the forfeitures described in this section occur. For purposes of this Section 4.5, absence from service on account of short-term disability or other paid or unpaid leave of absence taken with the approval of the Participating Employer, or short-term leave taken pursuant to any state or federal legislation or regulation, may be treated, at the Committee's discretion, as not constituting a termination of employment; provided, however, that any such determination shall in all cases be made consistent with applicable provisions of federal or state laws governing leaves of absence.

## ARTICLE 5

## DISTRIBUTIONS OF PLAN ACCOUNTS

5.1 Distributions in Connection with Time-Based Vesting

Except as otherwise elected by the Participant in accordance with Section 5.5 or as otherwise provided in Section 5.2 below, that portion of a Participant's Plan Account that becomes Vested pursuant to Section 4.1 (time-based vesting) shall be paid out in a lump sum by March 15th of the Plan Year following the vesting date (but no later than 90 days following the vesting date).

5.2 Distribution in Connection with Retirement

Except as otherwise elected by the Participant in accordance with Section 5.5, a Plan Account that becomes Vested pursuant to Section 4.2 (vesting upon eligibility for Retirement) shall be paid out according to the distribution schedule that would have applied had the Participant remained employed through the applicable vesting dates provided in Section 4.1.

5.3 Distribution in Connection with Involuntary Termination

Except as otherwise elected by the Participant in accordance with Section 5.5, a Plan Account that become Vested pursuant to Section 4.4 (vesting upon an Involuntary Termination of Employment) shall be paid out according to the distribution schedule that would have applied had the Participant remained employed through the payment dates provided in Section 4.1.

5.4 Mandatory Distribution upon Death, Total and Permanent Disability of Participant.

In the event of a Participant's death or Total and Permanent Disability, the Vested portion of Participant's Plan Account and that portion of a Participant's Plan Account that becomes Vested pursuant to Section 4.3 (vesting of Plan Account upon Death or Total and Permanent

Disability) shall be paid in a single sum to Participant or his or her Beneficiary within 90 days after the Participant's death or Total and Permanent Disability.

5.5 Deferral of Distribution

A Participant may elect to defer distribution beyond the time of distribution provided by Section 5.1, 5.2, or 5.3(a) by filing an election prior to the beginning of the Plan Year for which an Employer Allocation may be made, or, at such later date as permitted by the Committee, in accordance with the distribution schedules set forth in Subsections (a) or (b) below with respect to the portion of the Participant's Plan Account attributable to that particular Plan Year's Employer Allocation. If an election is permitted to be made after the beginning of the Plan Year for which an Employer Allocation may be made, such election must be filed with the Committee, in writing prior to such date as established by the Committee for this purpose, which date must, in all events, be prior to the date the Employer Allocation is fixed and credited for the benefit of the Participant. For purposes of clarity, any such election shall only be effective for Employer Allocations that are determined to be made for the benefit of a Participant, the amount of which has not yet been communicated to the Participant.

Additionally, the Committee may permit a Participant who is newly eligible for participation in the Plan to make a distribution election (to be effective with regard future Employer Allocations for such Participant) during the thirty (30) day period commencing as of the date such Participant is notified of his or her initial eligibility to participate in the Plan, to be effective with regard to Employer Allocations the amount of which are communicated to such Participant after the date of such election. Any such election of a Participant that is in effect as of the date an Employer Allocation has been communicated to the Participant shall thereafter be irrevocable as to such Employer Allocation. The alternative distribution options that may be elected are:

(a) Defer distribution of the portion of the Participant's Plan Account attributable to their Participant Plan Year's Employer Allocation, to the extent Vested pursuant to Article 4, until the Participant's Separation from Service; or

(b) Defer distribution of the portion of the Participant's Plan Account attributable to that particular Plan Year's Employer Allocation, to the extent Vested pursuant to Article 4, until the earlier of (i) the Participant's Separation from Service or (ii) on or about March 15th of the fourth Plan Year following the Plan Year for which such Employer Allocation was made (or such later date as may be elected by the Participant and that is acceptable to the Committee (but not beyond the Participant's Separation from Service)) or

Amounts deferred under (a) or (b) above, to the extent Vested pursuant to Article 4, shall nonetheless become immediately distributable upon (and paid within 90 days following) a Total and Permanent Disability that occurs prior to the date payment would otherwise be made in accordance with the Participant's election under (a) or (b) above.

5.6 Distribution upon Unforeseeable Emergency

A Participant must file a written application for a withdrawal due to Unforeseeable Emergency with the Committee such number of days prior to the date as of which it is to be

effective as the Committee may prescribe, for a distribution from the Participant's Plan Account prior to the date the Participant's Plan Account would otherwise be distributable in accordance with this Article V. Unforeseeable Emergency withdrawals may be made effective as soon as reasonably practicable following the Committee's receipt of the Participant's directions. The Committee shall grant an Unforeseeable Emergency withdrawal only to the extent it determines that the withdrawal is necessary to meet an immediate and heavy financial need of the Participant arising from circumstances constituting an Unforeseeable Emergency.

(a) Requirement of Unforeseeable Emergency Circumstances

An immediate and heavy financial need of the Participant arising from circumstances constituting an unforeseeable emergency means a financial need on account of:

(i) Expenses for medical care described in Code Section 213(d) for the Participant, the Participant's spouse, or any dependent of the Participant (as defined in Section 152 of the Code and consistent with the definition of dependent as used in the application of Sections 105 and 106 of the Code), resulting from an illness or accident;

(ii) The need to prevent the eviction of the Participant from his principal residence or foreclosure on the mortgage of the Participant's principal residence;

(iii) Payment for burial or funeral expenses for the Participant's deceased parent, spouse, child, or dependents (as defined in Section 152 of the Code, without regard to Section 152(d)(1)(B) of the Code);

(iv) Expenses for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10% of the Participant's adjusted gross income).

(v) Other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant.

(b) Requirement of Immediate and Heavy Financial Need

A withdrawal shall be deemed to be necessary to satisfy an immediate and heavy financial need of a Participant only if all of the following requirements are satisfied:

(i) The withdrawal is not in excess of the amount of the immediate and heavy financial need of the Participant; and

(ii) The Participant has obtained all other alternate financial relief available through reimbursement or compensation from insurance or otherwise, and by liquidation of the Participant's assets, to the extent the liquidation of such assets would not cause severe financial hardship, obtained all distributions, other than hardship distributions, and all non-taxable loans currently available under all plans maintained by an Employer or any Affiliate.

5.7 Source of Funds for Distribution of Benefits under the Plan

In general, the Company shall be responsible for the payment of all benefits to be distributed pursuant to the terms of the Plan. Notwithstanding the foregoing, however, with regard to any Participant who is or was an employee of a Participating Employer that is not included in the group of employers treated as a single employer under Section 414(b) or (c) of the Code, only the Participating Employer which employs or employed such Participant shall be responsible for payment of such Participant's benefit under the Plan.

5.8 Release Requirement

No distribution shall be made following a Separation from Service unless the Participant (or the Participant's executor or other legal representative) executes a release of claims in favor of the Company and its Affiliates that is in a form acceptable to the Committee, within the time frame provided for such release to be executed and does not, thereafter, revoke such release within such revocation period as is provided for in the release.

## ARTICLE 6

## ADMINISTRATION

6.1 Duties and Powers of the Committee

The Plan shall be administered by the Committee. The Committee shall establish such rules and procedures as it deems appropriate for the administration of the Plan. The Committee shall have the full power, discretion, and authority to interpret, construe and administer the terms of the Plan, and all decisions made by the Committee shall be final and binding. The Committee may employ legal counsel, consultants, actuaries, and others as it deems desirable in the administration of the Plan. Actions of the Committee shall be authorized by majority vote of the participating members and shall be recorded in writing in the minutes or resolutions of Committee meetings (which need not be held in person) or as otherwise determined by the Committee.

6.2 Claims for Benefits

A Claimant may bring a claim for benefits under this Plan by filing a written application for benefits with the Committee. Except as provided in Section 6.4, the Committee shall review such claim and shall decide such claim within a reasonable time, but not more than 90 days from the date the claim was received, unless special circumstances beyond the control of the Committee require an extension of time to respond, in which case the Committee may delay response for up to an additional 90 days, provided prior notice is given to the Claimant. If the claim is denied, the Committee shall provide the Claimant with a written or electronic notice setting forth the reasons for the denial, references to the provisions of the Plan upon which, the denial was based, a description of any additional information or material necessary for the Claimant to perfect his or her claim, information, as to how the Claimant may submit his or her claim for review, and a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA in the event that his or her claim is denied upon review.

6.3 Claims Review

If the Claimant wishes further consideration of the claim, the Claimant may request a review of the claim. Except as provided in Section 6.4, the request, together with a written statement of the Claimant's position, shall be filed with the Committee no later than 60 days after receipt of the notice of denial of the original claim. The Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to the claim for benefits. The Claimant shall also have the opportunity to submit comments, documents, records, and other information relating to the claim for benefits, and the Committee shall take into account all such information submitted without regard to whether such information was submitted or considered in the initial benefit determination. Except as provided in Section 6.4, the Committee shall fully and fairly review the matter within the next 60 days and shall promptly advise the Claimant of its final decision, except that, in special circumstances, the review period may be extended to 120 days, in which case the Claimant shall be notified in writing of the delay and the special circumstances requiring it before the end of the initial 60-day period; provided, however, that in the event the Claimant fails to submit information necessary to make a benefit determination on review, such period shall be tolled from the date on which the extension notice is sent to the Claimant until the date on which the Claimant responds to the request for additional information. The decision on review shall be written or electronic and, in the case of an adverse determination, shall include specific reasons for the decision, written in a manner calculated to be understood by the Claimant, and specific references to the pertinent Plan provisions on which the decision is based. The decision on review shall also include (a) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, or other information relevant to the claim for benefits; and (b) a statement of the Claimant's right to bring an action under Section 502(a) of ERISA.

6.4 Claims by reason of Total and Permanent Disability

In the event a Claimant's claim involves a determination of Total and Permanent Disability, the applicable time limitations set forth in section 2560.503-1(f)(3) and (i)(3) of the Department of Labor regulations shall apply to the extent required.

## ARTICLE 7

## MISCELLANEOUS

7.1 No Contract of Employment

This Plan is not intended to constitute a contract of employment, and each Participating Employer retains the right to discharge or discipline any Employee for any reason.

7.2 Funding

The amounts that may be payable under this Plan shall constitute general, unsecured obligations of the Company, payable solely out of the general assets of the Company, and no Participant shall have any rights to any specific assets of the Company. Plan Accounts under this Plan represent mere promises to pay amounts in the future. In the event the Company becomes

subject to an insolvency or bankruptcy proceeding, a Participant in the Plan shall only have the rights of a general, unsecured creditor of the Company for any distributions due under the Plan. This Plan is intended to be an unfunded program for purposes of the Code and for purposes of Title I of ERISA.

7.3 [Reserved]

7.4 Notices

Each Participant or Beneficiary shall be responsible for furnishing the Committee with the current and proper address for the mailing of notices. Any notice required or permitted to be given shall be deemed given if directed to the person to whom addressed at such address and mailed by United States mail, first-class and prepaid.

7.5 Venue; Limitation of Actions; Choice of Law

Any action relating to benefits under this Plan shall be brought in the courts of the Commonwealth of Massachusetts, located in Suffolk County or in the U.S. District court for the District of Massachusetts and may only be brought within two (2) years of the denial of a claim for benefits or when the cause of action accrued, if earlier. The Plan shall be construed in accordance with and governed by the laws of the Commonwealth of Massachusetts, without regard to its conflicts of laws provisions, to the extent such law is not preempted by federal law.

7.6 Binding Effect

The terms of this Plan shall be binding on the Participants, their Beneficiaries, and their legal representatives, and on the Participating Employers, and their successors, assigns, and legal representatives.

7.7 Non-alienation

None of the payments, benefits or rights of any Participant or Beneficiary shall be subject to the claims of any creditor, and, in particular, to the fullest extent permissible by law, all such payments, benefits and rights shall be free from attachment, garnishment, trustee’s process or any other legal or equitable process available to any creditor of such Participant or Beneficiary.

7.8 Incapacity

If the Committee determines that a Participant or Beneficiary is incompetent by reason of legal minority or physical or mental disability, the Committee shall have the power to cause the payments becoming due to such person to be made to another for the benefit of the minor or incompetent, without responsibility of the Company or the Committee to see to the application of such payment. Payments made in accordance with the application of such power shall operate as a complete discharge of all obligations of the Company and the Committee to the extent of such payment.

7.9 Amendment or Termination

This Plan may be amended or terminated, in whole or in part, at any time by action of the Committee in writing. No amendment or termination of the Plan shall deprive any Participant of the Vested interest in his or her Award or Plan Account as of the date of such amendment or termination without the consent of the Participant. With respect to any Participant who is an employee of a Participating Employer on or after the Effective Date, and notwithstanding anything to the contrary set forth herein, no amendment or termination of the Plan shall adversely impact any such Participant or deprive any such Participant of any interest in his or her Award or Plan Account, whether Vested or unvested, as of the date of such amendment or termination without the consent of the applicable Participant.

7.10 Other Plans

Nothing contained in this Plan shall preclude a Participant, to the extent he or she is otherwise eligible, from participation in any group insurance, pension, savings, or other employee benefit plans or programs which a Participating Employer in its discretion may make available to its employees, but the Participating Employer shall not be required to establish, maintain or continue any such plan or program by reason of this Plan. Any amounts payable under this Plan shall not be deemed to be salary, bonus or other compensation paid to a Participant for purposes of computing contributions to or benefits under any other employee benefit plan or program, unless specifically required pursuant to such other plan or program.

7.11 Integrated Agreement

Subject to Section 7.16 hereof, this Plan document represent the entire agreement between the Participating Employers and the Participants concerning the payment of long-term incentive compensation to the Participants.

7.12 Severability

If any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, and this Plan shall be construed and enforced as if such provision had not been included.

7.13 Withholding

A Participating Employer may withhold any federal, state or local taxes from any payment due any Participant or Beneficiary or from a Participant's compensation as it or the Committee determines pursuant to applicable law.

7.14 Construction

The masculine gender includes the feminine, and the singular the plural, and vice versa, unless the context clearly requires otherwise. The headings and captions contained herein are provided for convenience only, shall not be considered part of the Plan, and shall not be employed in construction of the Plan.

7.15 Code Section 409A Compliance

The Plan is intended to provide benefits that are exempt from or compliant with the requirements of Section 409A of the Code and shall be interpreted consistent with that intent. Notwithstanding any other provision of the Plan to the contrary, the Committee shall have the power to revise the amount, timing or form of any distribution under the Plan, or to take any other action as it, in its discretion, deems appropriate in order to maintain the Plan in compliance with the requirements of Section 409A of the Code. In addition, the following provisions shall be applicable to benefits and distributions made under the Plan:

(a) All distributions that are to be made as soon as practicable following an event or a date, as provided for in the Plan, shall be made at such time as is required to be exempt from or comply with the requirements of Code Section 409A.

(b) In the event a distribution is to be made by reason of a termination of employment, the Plan shall be interpreted and applied so that a termination of employment is deemed to have occurred at the time there is a "separation from service" (as that term is used for purposes of Code Section 409A and as defined in Treasury Regulation Section 1.409A-1(h)).

(c) All determinations regarding Total and Permanent Disability of a Participant shall be made in a manner consistent with the provisions of Code Section 409A and applicable Treasury Regulations, including Treasury Regulations Section 1.409A-3(i)(4).

(d) Each payment shall be treated as a separate payment for purposes of Code Section 409A.

(e) In the event a distribution of deferred compensation is made to a Participant who is then a "specified employee" of the Company at a time when the Company is a public company subject to Code Section 409A(a)(2)(B)(i) on account of such Participant's Separation from Service, distribution shall not be made earlier than on the date that is six months and one day following the Participant's Separation from Service.

7.16 Additional Terms and Conditions

Notwithstanding anything in the Plan to the contrary, in the event any legally binding agreement has been or is entered into between the Company and/or SVB and a Participant that expressly modifies the terms and conditions of the Plan, including but not limited to the definitions of "Good Reason" and "Cause," that agreement shall be deemed to be incorporated into, and made a part of the Plan, and shall be recorded in the records of the Committee; provided, however, that no such modification shall be implemented or treated as having any impact or effect on the Plan to the extent such modification would result in a violation of the requirements of Code Section 409A. By way of example, and not limitation, a binding agreement that has the effect of causing a Plan benefit to be Vested at a time prior to the date such benefit would otherwise be Vested under the Plan, but which does not modify the time of payment of such benefit, shall be treated for all purposes as a part of the Plan.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Company has caused its authorized officers to execute this document this 14th day of April, 2023.

SVB SECURITIES LLC

DocuSigned by:

By: Joe Gentile

095C33291B2241A...

Name: Joseph Gentile

Title: Chief Administrative Officer

DocuSigned by:

Attest: Steven P. Heineman

0054236640E7445...

Name: Steven P. Heineman

Title: General Counsel