**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

MAIRIN ROONEY,

        Plaintiff,

           v.

LEERINK PARTNERS, LLC, JEFFREY
LEERINK and DANIEL DUBIN,

        Defendants.

**Civil Action No.: 1:24-cv-11165-AK**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Mairin Rooney ("Rooney") has now had two opportunities to state a claim relating to her decision to resign her employment with Defendant Leerink Partners LLC ("Leerink Partners" or the "Firm") and forfeit compensation that was deferred pursuant to her offer letter (the "Offer Letter") and the Firm's deferred compensation plan (the "Plan").   Instead, the First Amended Complaint and Jury Demand (the "Amended Complaint" or "Am. Compl.") repeats state law claims that are fundamentally flawed because they are preempted by ERISA and are inadequate as a matter of law, and it adds a claim under ERISA that likewise fails.

Rooney alleges that she was entitled to the full gross amount of her guaranteed minimum bonuses (without any deferral) and special deferred compensation award set forth in the Offer Letter, in cash and by a date certain.   She asserts violation of the Massachusetts Wage Act, G.L. c. 149, § 148 (the "Wage Act"), breach of contract, quantum meruit, and breach of the implied covenant.   These claims must be dismissed because any state law claims relating to her bonuses and awards are preempted by ERISA.   But even if they were not preempted, they still should be dismissed for several reasons, including that deferred compensation awards and unpaid conditional bonuses are not "wages" within the meaning of the Wage Act and the Offer Letter does not state that she would receive those bonuses and awards in full, in cash or its equivalent, by a date certain. Indeed, the Offer Letter expressly states that her bonuses would be subject to deferral.

Rooney also asserts breach of contract and breach of the implied covenant arising out of the Firm's decision to change the title of several Managing Directors to Senior Managing Director six months after Rooney's employment began, a decision that ultimately led Rooney to resign, asserting "Good Reason" under the Firm's deferred compensation plan.   Those claims, too, must be dismissed because Rooney has not pled the existence of a single contract provision or actionable promise that the Firm breached.   Recognizing this, Rooney pivots to a fraud claim, alleging that

the Firm made a series of unidentified misrepresentations and omitted information about the Firm's decision to name other Senior Managing Directors almost a year before the changes in title occurred.  That fraud claim makes no sense on its face and also falls short of the heightened pleading standards of Rule 9(b).  Finally, Rooney brings breach of contract, breach of the implied covenant, and Wage Act retaliation claims based on the Firm's decision to waive in part her resignation notice period (as permitted by the Offer Letter) and the decision of Committee that administers the deferred compensation plan that Rooney did not have "Good Reason," resulting in Rooney forfeiting her unvested deferred compensation awards.  Those claims likewise fail because Rooney has not pled sufficient facts to state a claim.

This is fundamentally an ERISA case, as acknowledged by Rooney's attempt to add an ERISA claim.  Nevertheless, Rooney has failed to plead a viable ERISA claim because she names improper defendants, failed to exhaust her administrative remedies, and failed to plead that she had "Good Reason" to resign.

## BACKGROUND[1]

Leerink Partners hired Rooney as an investment banker in August 2021 pursuant to the terms of her April 30, 2021 Offer Letter.  Am. Compl. at ¶¶ 1-2, 10-11.  The Offer Letter provides that Rooney would serve in "the position of Senior Managing Director."  Affidavit of Steven P. Heineman in Support of Defendant's Motion to Dismiss [Dkt. No. 8] (hereinafter, "Heineman Aff."), Ex. A at 1.[2]  The Offer Letter specified Rooney's compensation: (i) an annual base salary

---

[1] Leerink Partners accepts the allegations in the Amended Complaint as true for purposes of this Motion only.
[2] Because the Offer Letter, the Plan, the Resignation Notice, Rooney's recorded phone call with Defendant Jeffrey Leerink ("Leerink"), and the Committee's February 20, 2024 decision (as each of these terms are defined herein) are all referenced in, paraphrased and/or quoted in, and central to, the Amended Complaint, the Court can consider each of those materials at the motion-to-dismiss phase.  *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (where a "complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)") (citations omitted).

(not at issue here), (ii) a one-time sign-on bonus in the form of a forgivable loan (also not at issue here), (iii) a special deferred compensation award of several million dollars to compensate Rooney for deferred compensation she forfeited when she resigned from Goldman Sachs; and (iv) minimum guaranteed bonuses for 2021, 2022, and 2023. *Id.* at 1-3. With respect to the 2023 bonus, the Offer Letter provides, in relevant part, as follows:

> You will receive a minimum guaranteed bonus for 2023 … less applicable withholdings and deductions. This bonus will be paid according to the [Firm's] 2023 bonus cycle schedule (expected to be February 2024) and ***will be subject to the [Firm's] deferred compensation plan***. In order to receive the guaranteed minimum bonus outlined above, you must either (a) ***be an active, full-time employee in good standing at the time this payment is made***, or (b) have had your employment terminated by the [Firm] without Cause (as defined below) prior to such payment.

*Id.* at 2 (emphasis added). The bonuses for 2021 and 2022 and the special deferred compensation award were also expressly "subject to" the Plan and contingent upon the same conditions. *Id.* at 1-3. The Offer Letter states that the Firm "may, at its sole discretion, change [Rooney's] duties, accounts, and responsibilities and to whom [she] report[s] in order to meet the needs of its business; provided however, [she] shall remain at least a Senior Managing Director …." *Id.* at 6. It also requires Rooney to provide the Firm "at least ninety (90) days prior written notice of the effective day of [her] … resignation[,]" but gives the Firm "the right to waive the notice requirement in whole or in part or to place [her] on paid leave for all or part of this ninety (90) day period." *Id.* at 4. The Offer Letter contains an integration clause. *Id.* at 7. The Offer Letter makes no mention of "Good Reason," a term that appears only in the Plan.

The Plan, amended and restated as of April 14, 2023, which Rooney's minimum guaranteed bonuses and special deferred compensation award were "subject to," is an ERISA-governed employee benefit plan. *See* Heineman Aff., Ex. D at § 7.2.[3] In summary, the Plan

---

[3] Leerink Partners was formerly a subsidiary of SVB Financial Group ("SVB"). In connection with SVB's bankruptcy

provides for the deferral of a portion of a participant's annual bonus compensation, with the deferred amounts vesting and being paid over a period of years unless forfeited.  The Plan was also the vehicle for Rooney's one-time special deferred compensation award.  Among other things, the Plan specifies when and how awards are made, vested, paid and (when applicable) forfeited, and that the plan is subject to ERISA.  *See, e.g.*, *id.*, Ex. D at §§ 2-6.

Rooney alleges that when she was recruited, she was promised that the title of Senior Managing Director "was a relatively exclusive one at [the Firm], as only a few individuals held the title, compared to the Managing Directors of which there were dozens."  Am. Compl. at ¶ 15. Rooney does not provide any of the necessary factual details regarding this alleged promise.[4] Instead, Rooney alleges – on information and belief – that Leerink Partners had an undisclosed plan to promote all its existing Managing Directors to Senior Managing Directors in an effort to recruit Rooney while rendering her title meaningless.  *See* Am. Compl. at ¶¶ 18-19.  Months after these promotions occurred, Rooney complained about them to Leerink, the Firm's Chairman and Chief Executive Officer, in a phone conversation recorded by Rooney.  *Id.* at ¶ 20.[5]  Rooney alleges that Leerink made promises on that call that he then failed to keep.  *See id.* at ¶¶ 20-22.  As reflected in the transcript of the conversation, however, Leerink made no promises at all.  *See generally* Heineman Aff., Ex. E.  Rooney further alleges, in addition to the purported undisclosed plan, that Leerink Partners created a new "Partner" title in September 2023, to further dilute Rooney's job responsibilities.  *See* Am. Compl. at ¶ 23.

---

reorganization, the Firm went through various corporate restructurings, with three deferred compensation plans being adopted during Rooney's tenure.  *See id.*, Exs. B-D.  Rooney suggests that the April 14, 2023, deferred compensation plan should control this dispute.  *See* Am. Compl. at ¶ 24.  There are no material differences between the three deferred compensation plans in place during Rooney's tenure.  As such, and for the purposes of this Motion only, Defendants presume that the April 14, 2023, deferred compensation plan controls.

[4] Tellingly, the Offer Letter, which contains an integration clause, says nothing about the supposed "relative exclusivity" of the Senior Managing Director title.  *See generally* Heineman Aff., Ex. A.

[5] Rooney fails to mention in the Amended Complaint that she surreptitiously recorded her conversation with Leerink in violation of the Massachusetts Wiretap Statute, G.L. c. 272, § 99.

On October 23, 2023, long after the promotions and recording Leerink, Rooney sent the Firm a notice of resignation for "Good Reason," a term in the Plan but nowhere in the Offer Letter (the "Resignation Notice"). Am. Compl. at ¶ 28; Heineman Aff., Ex. F.  Rooney wrote:

> I write to convey my notice to resign for "Good Reason" due to the firm's decision to elevate all Managing Directors to Senior Managing Director, resulting in the diminution of my authority and seniority.  Further, the firm has failed to deliver approximately $450,000 of my 2022 compensation to which I am entitled to pursuant to my offer letter.

*Id.*, Ex. F.  Rooney said nothing about the Firm's deferring portions of her 2021 and 2022 bonuses, the creation of the "Partner" title, or any so-called broken promises made by Leerink on the secretly recorded phone call.  In an attempt to salvage the unpaid balance of her 2023 bonus and the next vesting of a portion of her unvested deferred compensation (both of which would occur in late February but only if she were still employed), Rooney sought to set March 1, 2024 as her last day of employment, giving more than four months' notice, well beyond the 90 days required.  *See id.* Exercising its explicit right to "waive the notice requirement in whole or in part," Leerink Partners accepted Rooney's resignation on November 13, 2023, with an effective date of January 21, 2024 (90 days from the date of the Resignation Notice).  *See* Am. Compl. at ¶ 31.[6]

The Plan defines "Good Reason," in pertinent part, as follows:

> the Participant's resignation from the [Firm] that occurs on account of … (b) a material diminution in the Participant's duties and/or responsibilities with the [Firm] in effect immediately prior to such reduction … or (d) a material breach by the [Firm] of any agreement between [the Firm] and the Participant, including the failure to pay any amounts due under any such agreement …. [B]efore the Participant resigns for Good Reason, the Participant must have provided written notice to the Committee of his or her intent to resign for Good Reason and a description of the conditions in reasonable detail that the Participant contends constitute Good Reason ….

---

[6] Rooney alleges that the Firm's General Counsel acknowledged in an e-mail that the company waived Rooney's resignation notice requirement "to prevent her from receiving wages."  *Id.* at ¶ 32.  That is demonstrably false.

Heineman Aff., Ex. D at § 1.11.  On February 9, 2024, the Committee determined that Rooney's resignation was without "Good Reason," and, consequently, Rooney's unvested deferred compensation awards were forfeited under the terms of the Plan.  Am. Compl. at ¶ 40.  The Committee reasoned that while several Managing Directors had become Senior Managing Director, neither Rooney's title nor her duties and responsibilities had changed.  Heineman Aff., Ex. G at 2.  It further concluded that, because the Resignation Notice did not allege the new theories asserted by Rooney's attorney (and repeated here), including that there was a breach of an agreement that her title was to be "relatively exclusive," she was precluded from advancing those theories.  *Id.* at 1-2.  The Committee further noted that the Plan contains a "double trigger," *i.e.*, for a plan participant to resign for "Good Reason," (1) the participant must have sustained "Good Reason," and (2) the circumstances constituting Good Reason must have occurred within 24 months from, and have some nexus to, a Change in Control Event (as defined in the Plan).  *Id.* at 2-3.  Because Rooney had failed to show any purported diminution of "duties and/or responsibilities" at all, much less in connection with a Change in Control Event, the Committee concluded that Rooney did not have "Good Reason."  *Id.*  Finally, the Committee determined that the Firm had not breached any agreement with Rooney regarding her compensation, because the approximately $450,000 of restricted stock units she claimed she had not received were in fact awarded on February 28, 2023, as reflected in an e-mail she received on that date.  *Id.* at 3.  The Committee issued a written decision on February 20, 2024, and transmitted the decision to Rooney through her counsel on February 26, 2024.  Am. Compl. at ¶ 31.

The Plan required Rooney to seek further review of her claim for benefits within 60 days of receipt of the Committee's decision.  Heineman Aff., Ex. D at § 6.3.  Rooney never did.  Instead, Rooney initiated an action against the Firm in Massachusetts state court, bringing six state law

causes of action.  *See* Docket No. 1-1.  The Firm removed the action and moved to dismiss.  *See* Docket Nos. 1, 6.  Rooney amended her complaint on May 22, 2024, pursuant to Fed. R. Civ. P. 15, naming Leerink and Daniel Dubin ("Dubin") as additional defendants, and asserting a new ERISA claim alongside her state law claims from her original complaint.  *See* Docket No. 9.

ARGUMENT

## I.  <u>Motion to Dismiss Standard</u>

Defendants are entitled to dismissal of the Amended Complaint unless it "contain[s] sufficient factual matter … to state a claim to relief that is plausible on its face."  *Rios-Campbell v. United States DOC*, 927 F.3d 21, 24 (1st Cir. 2019) (citations omitted).  "[T]he Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken."  *Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*, 368 F. Supp. 3d 302, 309 (D. Mass. 2019).  While the Court must "accept as true all well-pleaded facts alleged in the complaint," it need not consider "conclusory legal allegations" or threadbare recitations of the legal elements of a claim.  *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33-34 (1st Cir. 2022) (citations omitted).  Where the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, dismissal is proper."  *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (citations omitted).

## II.  <u>Counts I, II, IV, V, and VII are Preempted by ERISA.</u>

Even though Leerink Partners' initial motion to dismiss made clear the fatal flaws in Rooney's state law claims, she repeats these same deficient claims.  Counts I, II, and V in their totality, and Counts IV and VI to the extent they relate to the Firm's payment of deferred compensation, must be dismissed because they "relate to" an ERISA plan and are preempted.

a. ERISA Preempts all State Law Causes of Action that Relate to ERISA Plans.

"ERISA 'supersedes all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Lavery v. Restoration Hardware, Inc.*, 2018 U.S. Dist. LEXIS 51292, at *4 (D. Mass. Mar. 28, 2018) (quoting 29 U.S.C. § 1444(a)). ERISA preemption is "deliberately expansive" and "conspicuous for its breadth," through its preemption of all state law causes of action that have any nexus to an ERISA plan. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *FMC Corp. v. Halladay*, 498 U.S. 52, 58 (1990).

> [T]he detailed provisions of [ERISA] § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Dismissal of a state law claim is warranted if (i) the plan is an "employee benefit plan" (which Rooney concedes, *see* Am. Compl. at ¶ 63) and (ii) the state law claim "relates to" this employee benefit plan. *See Remington v. J.B. Hunt Transp., Inc.*, 2017 U.S. Dist. LEXIS 65047, at **5-6 (D. Mass. Apr. 28, 2017) (citations omitted).

b. Counts I, II, IV, V, and VII Relate to the Deferred Compensation Plan.

Counts I, II, and V in whole, and Counts IV and VII in part, require the Court to interpret the terms of the Plan for purposes of liability and damages. As such, those Counts are preempted.

"A law 'relates to' an employee benefit plan … if it has a connection with or reference to such a plan." *Ingersoll-Rand*, 498 U.S. at 139 (citations omitted). For ERISA preemption, this Court "'must look beyond the face of the complaint and determine the real nature of the claim regardless of plaintiff's … characterization.'" *Filetti v. AOL, Inc.*, 2019 U.S. Dist. LEXIS 28137, at *7 (D. Mass. Feb. 22, 2019) (citations omitted). The First Circuit has "consistently held that a

cause of action 'relates to' an ERISA plan" "when a court must evaluate or interpret the state law cause of action" or "where the damages must be calculated using the terms of an ERISA plan." *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52 (1st Cir. 2000) (citations omitted).

Count I alleges that Defendants violated the Wage Act when they "failed and/or refused to pay [Rooney] her full guaranteed wages for 2021, 2022 and 2023 …." Am. Compl. at ¶ 51. The only purported "wages" Rooney complains of are the "minimum guaranteed bonuses" and the "special deferred compensation award" set forth in the Offer Letter and that are "subject to" the Plan. *See* Am. Compl. at ¶¶ 11-14 & p.3; Heineman Aff., Ex. A at 1-3. Thus, to determine whether Rooney was due these payments under the Wage Act (or otherwise), the Court would need to "evaluate or interpret the terms" of the Plan. *See Hampers*, 202 F.3d at 52.[7]

Count II purports to state a claim for Wage Act retaliation. *See* Am. Compl. at ¶¶ 54-60. While Rooney vaguely asserts that she "complained about the non-payment of her wages," *id.* at ¶ 55, the only conceivable protected conduct Rooney has alleged is the Resignation Notice, in which she wrote "the firm has failed to deliver approximately $450,000 of my 2022 compensation to which I am entitled pursuant to my offer letter." *Id.* at ¶¶ 28-29 & p.3; Heineman Aff., Ex. F. This is another permutation of her claim that Leerink Partners failed to pay in full Rooney's minimum guaranteed bonus for 2022 because a portion of it was deferred and granted as unvested RSUs, which, as noted above, was done expressly subject to the Plan. Indeed, it is the Plan itself

---

[7] Rooney's attempt to escape the terms of the contract she voluntarily entered into with Leerink Partners through application of the Wage Act is even more egregious now that she expressly asserts a claim relating to Leerink Partners' special deferred compensation award. *See* Am. Compl. at ¶ 14. As noted on page 3 of the Offer Letter, the special deferred compensation award was issued because Rooney "advised [Leerink Partners] that as of [her] date of employment with [Leerink Partners] [she] will have forfeited unvested deferred compensation awards … as a result of [her] separation from [her] prior firm and subsequent employment by [Leerink Partners.]" Heineman Aff., Ex. A at 3. Thus, Rooney, an experienced investment professional, knew full well how deferred compensation awards worked, and that her voluntary resignation placed those awards in jeopardy of being forfeited. Rooney seeks to leverage the fact that Leerink Partners is a Massachusetts-based company into an award of treble damages plus attorneys' fees in this action, notwithstanding her express agreement that portions of her compensation would be deferred and subject to forfeiture. Neither ERISA, the Wage Act, nor the Offer Letter tolerate such gamesmanship.

that specified that a portion (25%) of the amount deferred from a bonus would be in the form of RSUs. *See* Heineman Aff., Ex. D at § 3.1. Consequently, Rooney's Wage Act retaliation claim is a "a claim that [the Firm] terminated [Rooney] … because of [the Firm's purported] desire to avoid contributing to, or paying benefits under" an ERISA-governed plan. *See Ingersoll-Rand*, 498 U.S. at 140. The U.S. Supreme Court easily concluded that such a state law claim was preempted by ERISA. *Id.* This Court should follow suit and dismiss Count II.

Counts IV and VII – to the extent they are premised on Leerink Partners' alleged failure to pay Rooney deferred compensation awards after finding that the unvested portions had been forfeited when she resigned – and Count V are likewise preempted. *See* Am. Compl. at ¶¶ 70-81, 86-89. Those Counts assert breach of contract, breach of implied covenant, and quantum meruit theories of liability that all seek to recover the value of the deferred compensation awards set forth in the Offer Letter. Like Rooney's Wage Act claim, the Court must "evaluate or interpret" the terms of the Plan to determine liability and/or damages for each of those Counts. *See Hampers*, 202 F.3d at 52. Accordingly, these Counts should be dismissed on ERISA preemption grounds.[8]

III. **Rooney Fails to State a Wage Act Claim.**

Even if Rooney's Wage Act claim (Count I) is not preempted, it still fails as a matter of law. The only "wages" at issue here are (1) the unpaid balance of Rooney's 2023 bonus, (2) the portions of the minimum guaranteed bonuses for 2021 and 2022 that were deferred and remained

---

[8] *See, e.g.*, *Hampers*, 202 F.3d at 51-53 (breach of contract claim arising from employer's failure to include plaintiff as plan participant as promised in employment agreement preempted); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995) (misrepresentation claim preempted by ERISA where it "would require the court to refer to the [plan]" and "part of the damages to which the [plaintiffs] claim entitlement ultimately depends on an analysis of the [plan]"); *Filetti*, 2019 U.S. Dist. LEXIS 28137, at **8-15 (misclassification claim preempted because plaintiff sought damages for benefits under ERISA plan); *Gordon v. AstraZeneca AB*, 199 F. Supp. 3d 325, 329-32 (D. Mass. 2016) (Wage Act and breach of contract claims preempted where claims sought to recover unpaid severance benefits under ERISA plan); *Reyes v. S.J. Servs.*, 2014 U.S. Dist. LEXIS 132683, at **38-45 (D. Mass. Sept. 22, 2014) (Wage Act claims preempted where claims sought the value of health care benefits provided through ERISA plan); *Altshuler v. Animal Hosps., LTD*, 901 F. Supp. 2d 269, 278-79 (D. Mass. 2012) (retaliatory discharge and Wage Act claims arising from employer's failure to make deposits into retirement savings account preempted).

unvested/unpaid, and (3) the unvested/unpaid balance of the special deferred compensation award, each of which was deemed forfeited on account of Rooney's voluntary resignation. *See* Am. Compl. at ¶¶ 11-14. These bonuses and awards are <u>not</u> "wages" within the meaning of the Wage Act.[9] While the term "wages" is not defined in the Wage Act, courts have interpreted the term narrowly to further the purposes of the Wage Act.[10] The term "wages" means "those wages which have been 'earned,' and not monies which are 'discretionary' or contingent.'" *Roma*, 2015 U.S. Dist. LEXIS 43951, at *19 (citing *Weiss*, 718 F.3d at 47; *Weems*, 900 N.E.2d at 94).

Regardless of Rooney's characterization, the bonuses and forfeited deferred compensation she claims Leerink Partners failed to pay are not "wages." *See Sheedy*, 2011 U.S. Dist. LEXIS 131003, at *11 ("The law is clear that incentive or other bonus compensation is outside the scope of the Wage Act unless it qualifies as 'commissions' that are ascertained and due."); *Weems*, 900 N.E.2d at 92 ("Our appellate courts have held that the act does not cover contributions to deferred compensation plans ...."). Rooney's bonuses and deferred compensation awards were expressly "subject to" the Plan and contingent upon Rooney remaining an active, full-time employee. Heineman Aff., Ex. A at 1-3. Indeed, Rooney acknowledges the "contingent" nature of these payments in the Amended Complaint. *See* Am. Compl. at ¶ 12. Further, Leerink Partners' decisions as to how much to defer of Rooney's bonus awards, and whether unvested amounts had been forfeited, were discretionary and entitled to deference. Heineman Aff., Ex. D at § 6.1.[11]

---

[9] As a threshold matter, because Rooney was a New York resident working in Leerink Partners' New York office, *see* Heineman Aff., Ex. A, she was not subject to the Wage Act.

[10] *Weiss v. DHL Express, Inc.*, 718 F.3d 39, 47 (1st Cir. 2013); *see also id.* at 47-48 (bonus contingent on continued employment or determination that the employee's termination was without cause not covered by the Wage Act); *Roma v. Raito, Inc.*, 2015 U.S. Dist. LEXIS 43951, at **20-22 (D. Mass. Mar. 31, 2015) (employer's contributions to profit sharing/bonus program not covered by the Wage Act); *Sheedy v. Lehman Bros. Holdings, Inc.*, 2011 U.S. Dist. LEXIS 131003, at **10-11 (D. Mass. Nov. 14, 2011) (forgivable loan contingent on continued employment not covered by the Wage Act); *Weems v. Citigroup, Inc.*, 900 N.E.2d 89, 94 (Mass. 2009) (discretionary stock bonus contingent on continued employment not covered by the Wage Act); *Boston Police Patrolmen's Ass'n v. Boston*, 761 N.E.2d 479, 481 (Mass. 2002) (contributions to deferred compensation plan not covered by the Wage Act).

[11] To the extent Rooney intends to argue that the Offer Letter and/or the Deferred Compensation Plan were so-called

"[T]here is no evidence that the Legislature intended to provide treble damages and attorneys fees and costs to professionals enforcing their asserted contract rights." *Prozinski v. Northeast Real Estate Servs.*, 797 N.E.2d 415, 420 (Mass. App. Ct. 2003) (citations omitted). Yet, that is precisely what Rooney seeks here.

IV.    **Rooney Fails to State a Wage Act Retaliation Claim Against Dubin and Leerink.**

In addition to being preempted by ERISA, Rooney's Wage Act retaliation claim (Count II) also fails to state a claim as to Dubin and Leerink. The Wage Act's anti-retaliation provision, G.L. c. 149, § 148A, does not impose personal liability upon officers of a plaintiff's actual employer. *St. Fleur v. Kurtin*, 2022 Mass. Super. LEXIS 15, at *7 (May 18, 2022) ("[U]nlike the text of G.L. c. 149, § 148, there is no language in Section 148A that provides for personal liability on the part of a non-employer agent who has management authority over the corporate entity.").

V.    **Rooney Fails to State a Breach of Contract Claim.**

Even if Rooney's breach of contract claim (Count IV) were not preempted, the Court should still dismiss that count because Rooney has not adequately pled breach.

a.    The Offer Letter Flatly Contradicts the Claim that Rooney's "Guaranteed Wages" would be Paid in Full, in Cash or its Equivalent.

Rooney alleges that Leerink Partners has "failed and/or refused to pay [] her guaranteed wages as set forth in her Offer Letter." Am. Compl. at ¶ 71. As explained above, the Offer Letter provides that Rooney would receive "minimum guaranteed bonus[es]" for 2021, 2022, and 2023 which were "expected to be" paid the following February after each performance year, "and will be subject to the [Firm]'s deferred compensation plan." Heineman Aff., Ex. A at 1-2. Similarly,

---

"special contracts" prohibited by the Wage Act, the Supreme Judicial Court of Massachusetts (the "SJC") has squarely rejected that argument. In *Weems*, a case concerning an employer's contributions to stock programs on behalf of its employees, the SJC held "[b]ecause of our conclusion that the stock programs at issue here do not constitute wages under the [Wage Act], the special contract provision does not apply." *Weems*, 900 N.E.2d at 93 n.9.

the special deferred grant Rooney now complains of (but failed to complain about in the initial Complaint or the Resignation Notice) was also "subject to the terms and conditions of the [Firm]'s deferred compensation plan including those relating to vesting, payment and forfeiture." *Id.* at 3.

Rooney claims that Leerink Partners "failed to pay [her] the entirety of the guaranteed wages as set forth in her offer letter, electing instead to convey a substantial portion in contingent deferred compensation cash payments and unvested RSUs of its predecessor stock, ***instead of cash or its equivalent***." Am. Compl. at ¶ 12 (emphasis added). But the Offer Letter does not state that these payments would be paid in cash or its equivalent. In fact, the Offer Letter expressly provides that those payments "would be subject to" the Plan, and there can be no doubt that Rooney was fully familiar with what it means to have bonus compensation deferred under such a plan, because she forfeited her deferred compensation at Goldman Sachs when she resigned to join Leerink Partners (for which she was made whole by the Firm through the special deferred compensation award). Heineman Aff., Ex. A at 3. In full compliance with both the Offer Letter and the Plan, Rooney was awarded bonuses for 2021 and 2022 comprised of cash and deferred compensation (25% of which was SVB RSUs) totaling the amounts set forth in the Offer Letter. And, as also specified in the Offer Letter, the Firm did not award the remaining $900,000 of her bonus for 2023 because she was not an "active full-time employee in good standing at the time this payment [was] made" in February 2024. *Id.*, Ex. A at 2.[12] Rooney does not allege otherwise. Instead, her breach of contract claim ignores the plain and unambiguous language of the Offer Letter and the Plan.

      b.   <u>Rooney has not Identified any Actionable Promises.</u>

Rooney claims that Leerink Partners "breached their promises regarding [Rooney's] role as Senior Managing Director." Am. Compl. at ¶ 72. This claim must fail because Rooney has not

---

[12] Of Rooney's $2.55 million bonus for 2023, *see* Heineman Aff., Ex. A at 2, Leerink Partners paid Rooney in cash $1.6 million in April 2023.

identified a single promise anyone at Leerink Partners made regarding her Senior Managing Director position, much less a promise that was subsequently breached. To be sure, the Amended Complaint is replete with conclusory allegations phrased in the passive voice about promises that were purportedly made, but not specifically pled. *See id.* at p. 1 (alleging Leerink Partners made "promises [about] the position of Senior Managing Director"), ¶ 15 (alleging that Rooney "was also promised that she would serve as Senior Managing Director"), ¶ 72 (alleging that Leerink Partners breached unspecified promises about the Senior Managing Director position). Moreover, to the extent Rooney relies upon the supposed promises made by Leerink on their May 17, 2022 phone call, the verbatim transcript demonstrates that Leerink made no promises whatsoever. *See* Heineman Aff., Ex. E. Instead, Leerink made clear that he did not "have the answers yet" and that he "need[ed] some time to think more about" Rooney's complaints. *Id.* at 3.

Nor can Rooney sustain her breach of contract claim by reference to the Offer Letter. Indeed, it defeats this claim. The Offer Letter provides that she was being offered "the position of Senior Managing Director …." Heineman Aff., Ex. A at 1. Rooney admits that she served as Senior Managing Director throughout her tenure. Am. Compl. at ¶ 1. To the extent Rooney claims that Leerink Partners made various promises regarding the "relative[] exclusiv[ity]" of the Senior Managing Director position, those promises have not been adequately pled and are contrary to the Offer Letter. *See id.* at ¶ 15 (alleging that the Senior Managing Director title was exclusive, but failing to allege that anyone at Leerink Partners told her that). The Offer Letter says nothing about the exclusivity of the Senior Managing Director title. Instead, the Offer Letter states that Leerink Partners, "at its sole discretion, [may] change [Rooney's] duties, accounts, and responsibilities and to whom [she] report[s] in order to meet the needs of its business …." Heineman Aff., Ex. A at 6. Moreover, the Offer Letter contains an integration clause, providing that "[t]his Agreement

contains the entire understanding of the parties with respect to the matters addressed in it ….” *Id.* at 7. Thus, even had Rooney properly pled promises about the exclusivity of the Senior Managing Director title, those promises would not be actionable on a breach of contract theory of liability.

      c.   <u>Rooney has Failed to Plead Breach of the Deferred Compensation Plan.</u>

Rooney claims that Leerink Partners “breached the terms of the deferred compensation plan by failing and/or refusing to pay [Rooney] her deferred compensation after her Good Reason resignation as well as her guaranteed compensation.” Am. Compl. at ¶ 74. This claim, too, fails. The Plan provides that in the event of an Involuntary Termination of Employment, a plan participant “shall become 100% Vested in [her] Plan Account ….” Heineman Aff., Ex. D at § 4.4. Rooney has not alleged that the Firm terminated her employment, so to have suffered an Involuntary Termination of Employment Rooney must demonstrate that she satisfies all of the requirements of a “Good Reason” resignation, including that she suffered “a material diminution in [her] ***duties*** and/or ***responsibilities*** with the [Firm] in effect immediately prior to such reduction” or “a material breach by [the Firm] of any agreement ….” *Id.* at § 1.11 (emphasis added). Notably, the definition of “Good Reason” says nothing about a change in ***title***.

As a threshold matter, the Plan requires Rooney to “provid[e] written notice to the Committee of [her] intent to resign for Good Reason and a description of the conditions in reasonable detail ….” *Id.* at § 1.11. Rooney’s “written application” justifying her purported Good Reason resignation is exceedingly bare. *See id.*, Ex. F. It provides:

> I write to convey my notice to resign for “Good Reason” due to the firm’s decision to elevate all Managing Directors to Senior Managing Director, resulting in the diminution of my authority and seniority. Further, the firm has failed to deliver approximately $450,000 of my 2022 compensation to which I am entitled pursuant to my offer letter.

*Id.* Rooney did not explain how her “authority and seniority” were diminished as a result of

Leerink Partners' naming other Senior Managing Directors, nor did she ever claim that her "duties and/or responsibilities" (the actual terms used in the Plan's definition of "Good Reason") were diminished much less provide any indication of how they were diminished.  In the Amended Complaint, Rooney attempts to raise other claims that were not made in the Resignation Notice. The terms of the Plan, however, prohibit the assertion of new claims. Heineman Aff., Ex. D at § 1.11; *cf. Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (admonishing an ERISA plan participant's "fail[ure] to utilize the review procedure provided by [the plan], saving his complaints for the litigation process rather than the review procedure").

Nevertheless, even if Rooney had properly complied with the Plan's claim administration procedures, she still fails to plead "Good Reason" in the Amended Complaint.  Her allegations are devoid of the substance required by *Twombly*, *Iqbal*, and its progeny, and instead merely consist of conclusory allegations.  *See* Am. Compl. at p. 2 (alleging merely that the promotion of others to Senior Managing Director "resulted in a fundamental shift of reporting structure, authority and daily responsibilities" without providing any facts or specific allegations to support these bare conclusions), ¶ 19 (alleging that those promotions "had the effect of making [her] title and role virtually meaningless").  Those are the totality of her "Good Reason" allegations.[13]  That is not "Good Reason," and this claim should be dismissed.

VI. **Rooney Fails to State a Claim for Fraud in the Inducement.**

Rooney has also failed again to plead a viable fraud in the inducement claim (Count VI) with particularity in accordance with Fed. R. Civ. P. 9(b).  To plead fraud, Rooney must allege that (i) Defendants made a misrepresentation of fact, (ii) it was made with the intention to induce

---

[13] As noted in Leerink Partner's prior motion, nowhere in the Amended Complaint does Rooney allege – nor can she allege – that, for example, her role in pitching clients was diminished, her role in executing transactions was diminished, her role in supervising junior bankers was diminished, who she reported to had changed, or what she was authorized to do had changed.

another to act upon it, (iii) it was made with scienter, (iv) it was intended to be acted upon and was in fact acted upon, and (v) damages. *Hopkinton Friendly Serv. v. Global Cos., LLC*, 384 F. Supp. 3d 179, 190 (D. Mass. 2019) (citations omitted). Fed. R. Civ. P. 9(b) requires the "specification of the time, place, and content of an alleged false representation …." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). In other words, Rooney must allege the "who, what, where, and when of the allegedly [misleading] representation." *See Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016) (citations omitted) (alterations in original).

The Amended Complaint does not allege any actionable misrepresentations. Instead, Rooney's allegations are couched in vague assertions of "promises of guaranteed compensation and the position of Senior Managing Director[,]" Am. Compl. at 1, or "promises … used to lure [] Rooney," *id.* at 2, without further particularization. There are no allegations specifying what precise promises were made to Rooney, let alone who made those promises, where those promises were made, and when they were made. While Rooney alleges that Leerink made certain representations on their surreptitiously recorded phone call, *see id.* at ¶¶ 20, 25, the transcript from that phone call proves just the opposite. *See* Heineman Aff., Ex. E.

Unable to allege any specific affirmative misrepresentations (as noted in Leerink Partners' prior motion), Rooney changes course and now relies on supposed "omissions" as a basis for her fraud claim. She alleges that "there was a pre-existing plan before [] Rooney began her employment" to promote Managing Directors into the Senior Managing Director position, that Leerink and Dubin were aware of the plan, yet Leerink and Dubin failed to tell Rooney about it during her recruitment. *See* Am. Compl. at p. 2, ¶ 18. "Fraud by omission requires both concealment of material information and a duty requiring disclosure." *Sahin v. Sahin*, 435 Mass. 396, 402 n.9 (2001). "A duty to disclose exists where '(i) there is a fiduciary or other similar

relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statements of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.'" *Knapp v. Neptune Towers Assocs.*, 892 N.E.2d 820, 824 (Mass. App. Ct. 2008) (citations omitted).

Rooney has failed to plead that Leerink and Dubin had a duty to disclose the existence of the alleged plan. A fiduciary relationship is not created when a company recruits an executive. *CRA Int'l, Inc. v. Painter*, 2017 Mass. Super. LEXIS 36, at \*\*6-7 (Apr. 11, 2017). As explained above, Rooney has not identified any statement that was made to her during the recruitment process, let alone a partial or ambiguous statement that was misleading. And the alleged plan did not go to the essence of the transaction, which concerned Rooney's work as an investment banker for the Firm in exchange for millions of dollars of compensation. *See id.* at \*\*7-8 (dismissing fraud by omission claim where executive's employer failed to tell executive during the recruitment process information concerning weakness of the employer's market position).

Even if Rooney had identified an affirmative misrepresentation or pled a proper omissions theory, her fraud claim should still be dismissed for failure to plead scienter. Rooney's scienter allegations are limited to obscure references that Defendants "never intended" to honor unidentified promises, that Defendants' omissions were "intentional and knowing," and that Dubin "and others" "knowingly misled" Rooney. *See* Am. Compl. at p. 1-2, ¶¶ 18, 84.

> The courts have uniformly held inadequate a complaint's general averment of the defendant's "knowledge" of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (citations omitted) (emphasis in original). The scienter element is undermined by the fundamental absurdity of her claim. In essence, Rooney claims that in April 2021, while Rooney was being

recruited, the Firm harbored a plan to utilize a mass promotion and the later creation of a new "Partner" title to render Rooney's Senior Managing Director title "meaningless," and that plan was not effectuated for another two and a half years. *See* Am. Compl. at 1 (alleging Rooney was recruited in April 2021), ¶ 1 (alleging Rooney's employment began in August 2021), ¶ 19 (alleging promotions occurred in February 2022), ¶ 23 (alleging Leerink Partners created the "Partner" title to replace the Senior Managing Director title in September 2023, "in connection with" an October 2, 2023, change in control transaction). Rooney has not pled sufficient facts that would make it reasonable to believe that Defendants had agreed upon the undisclosed plan 30 months before the plan was effectuated, all with the knowledge that their alleged failure to speak up was materially misleading and with the specific intention of inducing Rooney into accepting their offer of employment. For all of these reasons, Rooney's fraud claim (Count VI) should be dismissed.

VII.    **Rooney's Implied Covenant Claim is Foreclosed by the Express Terms of the Offer Letter.**

"To establish a breach of the implied covenant, 'a plaintiff must prove that there existed an enforceable contract between the two parties and that the defendant did something that had the effect of destroying or injuring the right of [Rooney] to receive the fruits of the contract.'" *Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, 2021 U.S. Dist. LEXIS 12070, at *18 (D. Mass. Jan. 22, 2021) (citations omitted). Rooney's implied covenant allegations merely parrot the elements of an implied covenant claim. *See* Am. Compl. ¶¶ 86-89. When viewed charitably, Rooney alleges the following purported wrongful conduct: (i) Leerink Partners' undisclosed plan to give some of its Managing Directors the title of Senior Managing Director, thereby allegedly diluting Rooney's title; and (ii) Leerink Partners' purported "termination" of Rooney's employment on November 13, 2023, effective January 21, 2024, when it waived in part, as was its contractual right, the 130 days' notice Rooney sought to give. *See id.* at ¶¶ 18, 28-31.

"[T]he requirement of good faith performance is circumscribed by the obligations in the contract." *Janz Corp. v. Philips N. Am. LLC*, 2024 U.S. Dist. LEXIS 23957, at *10 (D. Mass. Feb. 12, 2004). Accordingly, "the covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship" and "the covenant [does not] apply where the defendant has exercised an express contractual power in good faith …." *Id.* The Offer Letter expressly provides Leerink Partners with the right to, in "its sole discretion, change [Rooney's] duties, accounts, and responsibilities and to whom [she] report[s] in order to meet the needs of its business …." Heineman Aff., Ex. A at 6. The Offer Letter also provides Leerink Partners with the right to "waive the [resignation] notice requirement in whole or in part or to place [Rooney] on paid leave for all or part of" the 90-day resignation notice period. *Id.* at 4. Because the Offer Letter expressly granted to Leerink Partners the unequivocal right to do exactly what Rooney now complains was improper, Rooney cannot sustain a breach of implied covenant claim on the bases identified in the Amended Complaint.

VIII.    **Rooney Fails to Plead a Quantum Meruit/Unjust Enrichment Claim.**

In addition to being preempted, Rooney's quantum meruit claim also fails. "To succeed with an unjust enrichment claim … a plaintiff must show that the defendant received, was aware of, and accepted or retained a benefit conferred by plaintiff 'under circumstances which make such acceptance or retention inequitable.'" *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (citations omitted). As already explained, Rooney has failed to plead any inequitable conduct that would sustain a quantum meruit or unjust enrichment claim. Rooney has not properly pled any compensation to which she was entitled that the Firm failed to pay, on top of the multiple millions of dollars that she did receive for her approximately two-and-a-half years of service. And Rooney has not pled that she was not given and did not continue to hold until her last day at Leerink

Partners the position of Senior Managing Director. Therefore, this Count must be dismissed.

IX.     **Rooney Fails to State an ERISA Claim.**

Rooney's ERISA claim (Count III) – the only claim that on its face goes to the true nature of this dispute – is so defective that it fails to state a claim and must be dismissed.

     a.     Rooney's ERISA Claim Must be Dismissed as to Defendants Leerink and Dubin.

While Rooney has not provided any specificity as to the nature of her ERISA claim, Defendants presume that Rooney is bringing a claim pursuant to 29 U.S.C. § 1132(a)(1)(B), which permits a plan participant to institute a civil action to "recover benefits due to [her] under the terms of [her] plan." *See also Terry v. Bayer Corp.*, 145 F.3d 28, 34 (1st Cir. 1998) ("It is under [29 U.S.C. § 1132(a)(1)(B)] that claims … challenging denials and termination of employer-sponsored … benefits are brought."). For such a claim, the "proper defendant … is the 'plan itself.'" *Newman v. Metro. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 32286, at *19 (D. Mass. Mar. 8, 2013) (quoting *Evans v. Akers*, 534 F.3d 65, 72 (1st Cir. 2008)). Here, because the Plan is an "unfunded" plan, where the amounts payable under the plan "constitute general, unsecured obligations" of the Firm, Heineman Aff., Ex. D at § 7.2, Leerink Partners is therefore the properly named defendant.

Nevertheless, Rooney brings her ERISA claim against Leerink and Dubin, in their personal capacities. *See* Am. Compl. at ¶¶ 61-69. Rooney alleges this is proper because "Leerink and Dubin both control, direct, and participate to a substantial degree in formulating and determining the operational and financial policy of [the Firm], and thus have individual liability for damages under [the Plan]." *Id.* at ¶ 69. Putting aside the conclusory nature of this allegation, Rooney cannot bring a § 1132(a)(1)(B) claim against Leerink and Dubin. Leerink, in his capacity as Chief Executive Officer, is a fiduciary of the Plan because he is a member of the Committee. *See* Heineman Aff., Ex. D at §§ 1.8, 6.1. Dubin has no role with respect to the Plan, and Rooney has

not alleged otherwise.  "With narrow exception, … ERISA does not authorize actions against nonfiduciaries of an ERISA plan." *Terry*, 145 F.3d at 35 (citations and quotations omitted). Therefore, Dubin, a nonfiduciary, must be dismissed.  Moreover, where, as here, there is no claim of breach of fiduciary duty, the fiduciaries of an ERISA plan are not proper defendants. *See Newman*, 2013 U.S. Dist. LEXIS 32286, at *21 (rejecting claimant's argument that fiduciaries of an ERISA plan can be named defendants in a § 1132(a)(1)(B) claim).   Therefore, Leerink (and Dubin, if he were somehow deemed to be a fiduciary) must also be dismissed.

> b.   Rooney Failed to Exhaust her Administrative Remedies.

 "A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides." *Medina v. Metropolitan Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2008) (citations omitted); *see also Drinkwater*, 846 F.2d at 825-26.

> The exhaustion doctrine serves many important policy considerations, including: 1) the reduction of frivolous litigation, 2) the promotion of consistent treatment of claims, 3) the provision of a nonadversarial method of claims settlement, 4) the minimization of costs of claims settlement, 5) a proper reliance on administrative expertise, and 6) the development of a complete record for review by the courts.

*Tarr v. State Mut. Life Assurance Co. of Am.*, 913 F. Supp. 40, 44 (D. Mass. 1996).

Here, the Plan sets forth a specific administrative claims process.  It provides that a plan beneficiary "may bring a claim for benefits under this Plan by filing a written application for benefits with the Committee."  Heineman Aff., Ex. D at § 6.2.  It continues:

> If the claim is denied, the Committee shall provide the Claimant with a written notice or electronic notice setting forth the reasons for the denial, references to the provisions of the Plan upon which[] the denial was based, a description of any additional information or material necessary for the Claimant to perfect his or her claim, information[] as to how the Claimant may submit his or her claim for review, and a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA in the event that his or her claim is denied upon review.

*Id.* Rooney alleges that she made a claim for benefits under the Plan and that the Committee denied her claim. *See* Am. Compl. at ¶¶ 28-29, 40; Heineman Aff., Exs. F & G. What Rooney has not alleged (and cannot allege) is that she submitted a request for a review of her claim pursuant to section 6.3 of the Plan. *See id.*, Ex. D at § 6.3. Consequently, she has failed to exhaust her administrative remedies, and Leerink Partners is entitled to dismissal of her ERISA claim. *See, e.g.*, *Hogan v. Fid. Invs. Institutional Operations Co.*, 2013 U.S. Dist. LEXIS 45705, at **8-10 (D. Mass. Mar. 29, 2013) (denying plaintiff opportunity to replead ERISA claim where plaintiff could not allege that he exhausted administrative remedies under the plan).

Recognizing her failure to exhaust, Rooney attempts to evade this requirement by arguing (i) exhaustion would have been futile, and (ii) the Firm failed to comply with the Plan's notice requirements. *See* Am. Compl. at ¶¶ 41, 43, 46. Both arguments fail. *First*, "[f]or the [futility] exception to apply … the plaintiff must assert facts supporting [her] claim of futility; '[a] blanket assertion, unsupported by any facts, is insufficient.'" *Tarr*, 913 F. Supp. at 44 (quoting *Drinkwater*, 846 F.2d at 826). Futility should not easily be granted, as "the exhaustion requirement is designed to permit a more expert review of the [benefits claim] than a court can provide …." *Fletcher v. Tufts Univ.*, 367 F. Supp. 2d 99, 117 (D. Mass. 2005). Rooney has pled no facts to indicate that her administrative appeal would have been futile. Instead, Rooney makes the conclusory allegation that, "[g]iven the Committee's misconduct, including but not limited to re-writing the Plan under the guise of interpretation and depriving [] Rooney of both notice of her internal appeal rights and her right to pursue legal claims, any internal appeal would have been futile." *See* Am. Compl. at ¶ 46. That argument has been rejected by the First Circuit. *See Madera v. Marsh USA, Inc.*, 426 F.3d 56, 62 (1st Cir. 2005) (rejecting plaintiff's claim that exhaustion would have been futile because "it would have been pointless to require him to seek review from

[his employer] asking it to review its own unlawful conduct"). The Court should therefore dismiss Rooney's ERISA claim on exhaustion grounds. *See Fletcher*, 367 F. Supp. 2d at 116-17 (rejecting ERISA claim where plaintiff failed to exhaust her administrative remedies and her futility claim was not supported by a "clear and positive" showing); *Tarr*, 913 F. Supp. at 43-45.

*Second*, Rooney's allegation that she should be excused from the exhaustion requirement because of the Committee's asserted notice violations also fails. "ERISA's notice requirements are not meant to create a system of strict liability for formal notice failures." *Terry*, 145 F.3d at 39. When a plan denies benefits, the plan is "required to provide a notification that sets forth 'specific reasons for such a denial, written in a manner calculated to be understood by the participant.'" *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 237 (1st Cir. 2006) (citations omitted). "Substantial compliance with the regulations is sufficient." *Terry*, 145 F.3d at 39 (citations and quotations omitted). Rooney does not allege how the Committee's notice is deficient; indeed, the Committee's decision provided the specific, easily understandable reasons for the denial of her claim for benefits required by ERISA. *See* Heineman Aff., Ex. G.

Moreover, Rooney has pled no facts that would permit the Court to conclude that Rooney was prejudiced by the fact that the Committee did not expressly notify her in its decision how to further appeal or litigate her claim. *See Bard*, 471 F.3d at 240-41 (requiring plan participant to show prejudice for any notice deficiency). To demonstrate prejudice, Rooney must show that "a precisely correct form of notice would have made a difference" in a benefit claims outcome. *Terry*, 145 F.3d at 39. Rooney cannot meet this requirement. Rooney was provided the Plan and was represented throughout the claims administration process by the same counsel (who also had the Plan) representing Rooney here. *See* Am. Compl. at ¶¶ 28 (alleging that she submitted a notice of resignation in accordance with the Plan); 39 (alleging that she notified Leerink Partners, through

counsel, that she was entitled to benefits under the Plan). The Plan itself spells out how to appeal an adverse decision regarding a claim for benefits and discloses the right to pursue litigation in court. Heineman Aff., Ex. D at § 6.3. Rooney has not properly pled how the Committee's decision was defective or how she was prejudiced by the decision's so-called deficiencies.

        c.  <u>Rooney has Failed to Plead "Good Reason."</u>

Even if Rooney can be excused from exhaustion, the ERISA claim should be dismissed for the separate reason that she has failed to plead that she resigned from her employment for "Good Reason" and that therefore there was a violation of the Plan. As explained in more detail in Section V, *supra*, Rooney has not pled a material breach of an agreement, nor has she pled that her duties or responsibilities were materially diminished (let alone sufficient facts to conclude that the Committee's decision was arbitrary and capricious). Moreover, the Committee's well-reasoned decision is entitled to this Court's deference and should not be second-guessed where there are no factual allegations suggesting that the decision was arbitrary and capricious. *See Medina*, 588 F.3d at 45 ("Because the Plan grants [the Committee] discretionary authority to determine eligibility for benefits, we will not overturn its decision unless it was arbitrary and capricious.") (citations omitted); Heineman Aff., Ex. D at § 6.1 ("The Committee shall have the full power, discretion, and authority to interpret, construe and administer the terms of the Plan."). Without "Good Reason," pursuant to the terms of the Plan and consistent with the Committee's determination, the Committee's decision must be upheld. Her ERISA claim, therefore, should be dismissed.

WHEREFORE, for the reasons stated herein, Defendants respectfully request that the Amended Complaint be dismissed in its totality and, given that Leerink Partners' original motion to dismiss clearly identified the prior complaint's numerous pleading deficiencies (which Rooney has been unable to remedy), that the Court dismiss the Amended Complaint with prejudice.

Dated: June 5, 2024

                                        LEERINK PARTNERS LLC,

                                        By Its Attorneys,


                                        /s/  Christian A. Garcia
                                        Michael L. Rosen (BBO # 559954)
                                        Christian A. Garcia (BBO #703433)
                                        Foley Hoag LLP
                                        Seaport West
                                        155 Seaport Boulevard
                                        Boston, MA 02210-2600
                                        Telephone:  617 832 1000
                                        Facsimile:  617 832 7000
                                        mrosen@foleyhoag.com
                                        cgarcia@foleyhoag.com


## CERTIFICATE OF SERVICE

I, Christian A. Garcia, hereby certify that on this 5th day of June 2024, the foregoing document was served via electronic mail upon the following counsel of record:

Philip J. Gordon, Esq.
Benjamin Flam, Esq.
Gordon Law Group, LLP
585 Boylston Street
Boston, MA 02116
(617) 536-1800
pgordon@gordonllp.com
bflam@gordonllp.com


                                        /s/   Christian A. Garcia
                                        Christian A. Garcia