IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAIRIN ROONEY,

    Plaintiff,

        v.

LEERINK PARTNERS LLC, JEFFREY
LEERINK and DANIEL DUBIN

    Defendants.

**Civil Action No.: 1:24-cv-11165-AK**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT AND JURY DEMAND**

Confronted with a second motion to dismiss, Plaintiff's Opposition to Defendants' Motion to Dismiss [Dkt. No. 18] (the "Opposition" or "Opp.") does nothing to salvage her doomed claims. The Opposition ignores many of Defendants'[1] arguments, responds to strawman arguments, mischaracterizes the pleadings, adds new factual allegations (including by mischaracterizing unauthenticated emails), and hurls unsupported accusations. Looking past Rooney's unmoored rhetoric, the Opposition demonstrates that Rooney has not stated any viable claim.

I. **Rooney's State Law Compensation Claims are Preempted by ERISA.**

Despite Rooney's allegation that the Plan is an ERISA plan, Am. Compl. at ¶ 63, her claim that she "states a well pleaded claim under ERISA," Opp. at 13, and that the Plan states it is subject to ERISA, Heineman Aff., Ex. D at § 7.2, Rooney now argues the opposite. Opp. at 13-15.

ERISA applies to any "employee benefit plan," which includes any "employee pension benefit plan." 29 U.S.C. § 1002(3). "Employee pension benefit plan," in turn, includes:

> [A]ny plan … which was … established or maintained by an employer … that by its express terms or as a result of surrounding circumstances such plan … results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or method of distributing benefits from the plan.

*Id.* at § 1002(A)(ii). The Plan easily meets this definition. *See* Heineman Aff., Ex. D at § 5.1 (providing for distribution of benefits by the March following the vesting of benefits), § 5.2 (providing for distribution of benefits after retirement as defined in the Plan), § 5.3 (providing for vesting as a result of, and distribution of benefits following, an involuntary termination of employment), § 5.4 (providing for vesting as a result of, and distribution of benefits following,

---

[1] Terms not defined herein have meanings provided in Defendants' Memorandum in Support of their Motion to Dismiss the First Amended Complaint and Jury Demand [Dkt. No. 15] (the "Memorandum" or "Memo").

death, total or permanent disability), § 5.5 (providing for distribution of benefits where the employee elects to defer distribution to later dates).

In determining whether a plan is governed by ERISA, this Court considers whether (i) the payments are ongoing, (ii) the employer's obligation is triggered by the occurrence of a particular contingency, (iii) the plan administrator has discretionary functions, (iv) the plan contains a detailed claims procedure, and (v) the plan states that it is governed by ERISA. *Gordon v. AstraZeneca AB*, 199 F. Supp. 3d 325, 331 (D. Mass. 2016). The Plan satisfies each. Moreover, the First Circuit has recognized deferred compensation plans, like the Plan, are so-called "top-hat" plans subject to ERISA. *See Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 44-48 (1st Cir. 2008); *Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242-43 (1st Cir. 2002).

Rooney nevertheless argues that the Plan is not an ERISA plan because (i) annual bonuses are not covered by ERISA, (ii) the Plan involves a "one-time, lumpsum payment," and (iii) "simple arithmetic can be used to determine payments." Opp. at 13-15. Each argument fails. Rooney relies on the bonus program exception, which provides that an "employee pension benefit plan" "shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond …." 29 C.F.R. § 2510.3-2(c). As explained above, the Plan contemplates the systematic deferral of benefits for periods following employment. But even if it did not meet this requirement, the Plan qualifies because it is "unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Alexander*, 513 F.3d at 42 (citations and quotations omitted). Furthermore, the Plan does not involve a "one-time, lumpsum payment" or provide distributions that can be calculated using simple arithmetic. Instead, the Plan provides for vesting and payment

over a period of years, and the amount of each payment depends on the deemed investment income (or losses) between grant and distribution. The Plan further requires ongoing administration over claims benefits, eligibility determinations, claims review, and interpretation of the Plan's terms.[2]

## II.  **Rooney's Compensation Awards are not "Wages."**

Rooney argues that her annual bonuses and deferred compensation awards were "guaranteed" and "non-discretionary," and therefore constitute "wages." Opp. at 1, 5. Her argument is premised on cherry-picking language from the Offer Letter while dismissing as mere surplusage other language that expressly qualifies the Firm's payment obligations. Critically, Rooney's reading renders meaningless the plain language of the Offer Letter stating that her bonuses are "subject to" the Plan. *See Weems v. Citigroup, Inc.*, 900 N.E.2d 89, 94 (Mass. 2009) (applying contingencies set forth in bonus program's governing documents in determining whether bonuses constituted "wages").[3]

That Rooney well understood that portions of her bonuses would be deferred is underscored by the fact that the Amended Complaint does not allege that she ever complained, in the Resignation Notice or at any other time, that deferral of her bonuses was improper. Similarly, Rooney fails to acknowledge that the Offer Letter provides no date certain for Rooney to receive the bonuses set forth therein;[4] does not specify in what form those bonuses would be paid;

---

[2] The cases Rooney relies upon are distinguishable. *See* Opp. at 13-15. *Keefe v. LendUs, LLC*, 2020 U.S. Dist. LEXIS 99924, at **6-7 (D.N.H. June 8, 2020), concerns an Executive Incentive Bonus Program and conclusorily finds that annual bonuses thereunder "were not deferred compensation." *Vrana v. Atkins N. Am. Holdings Corp.*, 2013 U.S. Dist. LEXIS 199411, at *11 (M.D. Fla. Aug. 27, 2013), concerns a "one-time lump sum payment[] made to Plaintiff after a determination that he is entitled to those benefits that does not require an ongoing administrative scheme by Defendant." In contrast, the Plan contemplates annual distributions, deferred to time periods following a participant's employment, and requires the Committee to perform ongoing administrative functions.

[3] Rooney claims that the Offer Letter does not state that the bonuses will be a "deferred or partially deferred bonus or compensation, … will be subject to a vesting and/or payment schedule set out over a number of years, … [or] will be paid into a deferred compensation plan …." Opp. at 6-7. But the Offer Letter states that the bonuses would be "subject to" the Plan, which includes precisely those terms.

[4] Rooney states that the bonuses "were to be paid in February 2022, 2023 and 2024, respectively." Opp. at 6. The Offer Letter provides, instead, that the "bonus will be paid according to the [Firm's] 2023 bonus cycle schedule (**expected to be February 2024**) …." Heineman Aff., Ex. A at 2 (emphasis added).

3

permitted the Firm to defer a portion of the bonus in deferred compensation awards (the amount and form of which were not specified);[5] and states various contingencies Rooney would need to meet to be eligible to receive her bonuses or for distributions from the Plan. Similarly, the special deferred compensation grant – which was expressly designed to make Rooney whole for deferred compensation she forfeited by resigning from Goldman Sachs – was, by the Offer Letter's express terms, also deferred with a detailed vesting and payment schedule attached to the Offer Letter. *See* Heineman Aff., Ex. A at 3.

The cases Rooney claims support her assertion that the bonuses and grant are "wages" are inapposite. *See* Opp. at 5.[6] Absent from the Opposition is any reference to *Boston Police Patrolmen's Ass'n v. Boston*, 761 N.E.2d 479 (Mass. 2002), where the SJC held:

> The Legislature's remedy for the evil of unreasonable detention of wages is not applicable to deferred compensation contributions. The contributed funds are intended to be held, out of the employee's possession, for an extended period. In exchange, the employee receives the benefit of a tax deferment.

*Id.* at 481. The Opposition does not explain why *Boston Police* is inapplicable, nor why *Serebennikov* and *Brennan* – which do not concern deferred compensation awards – control.

---

[5] "A Participant may be awarded an Award with respect to a Performance Year as determined by the Committee. The determination as to the amount of an Award and the determination of the date of the Award shall be at the discretion of the Committee, based on such facts and circumstances as the Committee deems to be relevant for this purpose. Awards shall be settled in cash, through the making of an Employer Allocation to a Participant's Plan Account pursuant to Section 3.2 …. The determination of the date as of which such Employer Allocation is to be credited to a Participant's Plan Account shall be at the discretion of the Committee …. A Participant's Plan Account shall be credited or debited with adjustments for earnings at such time or times as the Committee determines, which may be based on daily valuations or on such other basis as the Committee establishes from time to time." Heineman Aff., Ex. D at §§ 3.1-3.3.

[6] *Serebennikov v. Proxet Grp. LLC*, 2024 U.S. Dist. LEXIS 59363, at \*\*3, 12 (D. Mass. Mar. 29, 2024), concerns an **oral** agreement for nondiscretionary bonuses, which was supported by allegations of "specific time periods of the alleged oral agreements, along with a conforming pattern of payment …." *Brennan v. Arthur D. Little, Inc.*, 2020 Mass. Super. LEXIS 180, at \*\*2-3 (Oct. 8, 2020), involved the denial of summary judgment where the record "include[d] credible evidence … that … ADL regarded Plaintiff's bonus … as having been earned …." Here, however, Rooney's claim is based on the terms of the Offer Letter, which incorporates the provisions of the Plan, and provides for the deferral of portions of Rooney's awards subject to the terms of the Plan.

Rooney also argues that the Offer Letter's language providing that the bonuses and the grant are "subject to" the Plan is a "special contract" prohibited by the Wage Act. *See* Opp. at 5, 8-9. In *Weems*, the SJC squarely rejected that argument, holding that an employer's contributions to stock programs on behalf of its employees are not "wages" under the Wage Act, and therefore the Wage Act's special contract prohibition did not apply. 900 N.E.2d at 93, n.9. Rooney seeks to distinguish *Weems* by arguing that the payments at issue there were "discretionary." *See* Opp. at 5. So, too, are the bonuses and the grant at issue here. While the amount of the bonuses and grant were set forth in the Offer Letter, the Committee retained discretion over how much of the bonus would be deferred and what form the deferred award would take (whether it be cash, restricted stock units, or another form). *See supra*, note 5. That discretion means that the bonuses and grant are not "wages," and renders the special contract prohibition inapplicable.

Moreover, as in *Weems*, the bonuses and the grant were neither "due" nor "payable" because they contained –

> [A]n important contingency attached to it: an employee who received such an award would receive the full benefit of the [award] … only if the employee remained employed with the company for the defined period after the award. The only thing they "earned" as a result of their bonus was [an award] that had limited value to them until it vested.

*See Weems*, 900 N.E.2d at 94. Thus, as in *Weems*, the bonuses and the grant are subject to contingencies, not due and payable, and are therefore not "wages" under the Wage Act.[7]

### III. **Rooney Fails to Address Defendants' Breach of Contract Arguments**

---

[7] Rooney's argument that her Wage Act claim (if not preempted) should survive because "[t]he Legislature has repeatedly 'broadened the scope'" of the law deserves short shrift. *See* Opp. at 6 (citations omitted). The Legislature has not expanded the law to encompass deferred compensation or other contingent compensation. Rooney's reliance on *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280, 288 (D. Mass. 2013), does not change the result. Contrary to Rooney's argument that *McAleer* does not permit any discretion in the award of compensation, *McAleer* expressly held that "[w]hen a compensation plan specifically sets out the contingencies an employee must meet to earn a commission, courts apply the terms of the plan …." *Id.* at 289 (citations omitted). The Offer Letter and Plan each contain contingencies; therefore, the Court must apply the terms of the Offer Letter and the Plan as written.

5

The Opposition is conspicuously silent as to how the Amended Complaint states a claim that Rooney's duties and/or responsibilities were diminished, as required for her to establish "Good Reason" under the Plan. Nor has Rooney made any effort to rebut the fact that she got, and kept, the Senior Managing Director title she was promised in the Offer Letter. And Rooney's claims that the Firm materially breached agreements relating to her compensation are foreclosed by the terms of the Offer Letter and the Plan, as explained in detail in Section II. Nor does the Opposition address Rooney's failure to "provid[e] written notice to the Committee of [her] intent to resign for Good Reason and a description of the conditions in reasonable detail …." *See* Memo at 15 (citations and quotations omitted).[8] These glaring omissions are not just telling. They are concessions fatal to Rooney's breach of contract claim.

IV. **The Amended Complaint does not State an ERISA Claim.**

The Opposition accuses Defendants of rewriting the Plan, "denying [] Rooney her internal appellate rights," "adding new unlawful preconditions to receiving wages," altering her "termination date," "defaming her to clients," and "fraudulently" delivering "worthless" restricted stock units. Opp. at 1-2. This rhetoric is not properly pled and therefore cannot be considered. Even if it were, however, Rooney still has not specified the nature of her ERISA claim, whether it be failure to provide required information (§ 1132(a)(1)(A)), to recover benefits (§ 1132(a)(1)(B)), or breach of fiduciary duty (§ 1132(a)(2)).

Had Rooney identified the nature of her ERISA claim, that claim still must be dismissed because: (1) there is no basis for a claim against Leerink and Dubin; (2) Rooney has failed to plead exhaustion; and (3) Rooney has failed to plead Good Reason under the Plan. *See* Memo at 21-25.

---

[8] For example, Rooney ignores the fact that the Resignation Notice never raised any issues regarding the deferral of a portion of her bonuses or the so-called promises made by Leerink in the secretly-recorded phone call that she now claims were breached.

6

Regarding exhaustion, Rooney argues that "Defendants' refusal to provide [] Rooney with her appellate rights … is shocking, especially where Defendants now have the audacity to claim that [] Rooney failed to exhaust her internal appeal after hiding those rights from her."  Opp. at 17. Rooney provides no support for her assertion that Defendants "hid rights" from her, ignoring that she was represented by competent counsel who had access to the Plan (including its appellate rights provisions) throughout the process.  Rooney also fails to demonstrate that she was prejudiced by Defendants' alleged notice violations.  *See* Memo at 23-24.

V. **Rooney Identifies No Authorities Supporting her Argument that she can Assert her Wage Act Retaliation Claim Against Officers.**

Rooney argues that she has pled a Wage Act retaliation claim, even though Defendants did not contend otherwise.  *See* Opp. at 9-11.[9]  Defendants do contend that the claim cannot be brought against Dubin and Leerink individually.  Rooney acknowledges that under *St. Fleur v. Kurtin*, 2022 Mass. Super. LEXIS 15 (May 18, 2022), Rooney cannot name Dubin and Leerink, but urges the Court to not follow *St. Fleur*.  *See* Opp. at 11-13.  The cases Rooney relies upon, however, do not address the issue.[10]

VI. **The Opposition Concedes the Inadequacy of the Implied Covenant, Quantum Meruit, and Fraud Claims.**

---

[9] Defendants are nevertheless constrained to respond to the assertion that Defendants "argue[d] that [] Rooney could not have given notice and been eligible for her guaranteed bonus."  *See* Opp. at 10 (citing Memo at 13).  Defendants made no such argument.  Rooney makes this unintelligible assertion and then accuses Defendants of "falsif[ying] this fact" to the Court.  *Id*.  Defendants vigorously dispute that they have made any misrepresentations to the Court.

[10] *See Joyce v. The Upper Crust, LLC*, 2015 U.S. Dist. LEXIS 95542, at **18-19 (D. Mass. July 21, 2015) (denying summary judgment on Wage Act retaliation claim where there was a triable issue of fact as to whether employer was aware of protected conduct); *Parker v. EnerNOC, Inc.*, 139 N.E.3d 328, 332-36 (Mass. 2020) (considering a sufficiency of the evidence argument and whether the trial court erred in failing to treble a portion of the damages award); *Cook v. Patient Edu, LLC*, 989 N.E.2d 847, 848 (Mass. 2013) (considering whether managers of a limited liability company can be held individually liable for Section 148 Wage Act claims); *Fraelick v. PerkettPR, Inc.*, 989 N.E.2d 517, 523-25 (Mass. App. Ct. 2013) (considering whether employee stated Wage Act retaliation claim where employee complained of non-payment of business expenses).

The Opposition fails to demonstrate that the implied covenant, quantum meruit, and fraud claims are adequately pleaded. Rooney does not explain what implied covenants the Firm allegedly breached, or how actions taken by the Firm expressly permitted by the relevant contract can sustain the claim. *Compare* Memo at 19-20 *with* Opp. at 19. She also fails to point to any alleged inequitable conduct that can sustain a quantum meruit or unjust enrichment claim. *Compare* Memo at 20 *with* Opp. at 19. And Rooney makes no effort to show how her fraud claim complies with Rule 9(b). *Compare* Memo at 16-19 *with* Opp. at 19-20.

VII. **The Opposition's Two Exhibits [Dkt. Nos. 18-1, 18-2] Should Not be Considered and in Any Event do not Support Rooney's Argument.**

The Court may not consider extrinsic materials at the motion-to-dismiss phase unless the Amended Complaint's factual allegations are "expressly linked to – and admittedly dependent upon" those materials and the materials are properly authenticated. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Unlike materials that Defendants provided with the Motion – all of which were expressly referred to in the Amended Complaint and properly authenticated – Rooney makes no attempt to demonstrate how the Amended Complaint is "dependent upon" these two communications or to authenticate them. In any event, the communications are not relevant because they do not support Rooney's argument that the Amended Complaint has stated a claim.[11]

WHEREFORE, for the reasons stated herein and in the Memorandum, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

---

[11] Moreover, Rooney misrepresents what those communications say. For example, Rooney falsely maintains that the Firm's General Counsel wrote that the Firm "gerrymander[ed] her termination date simply to deprive [] Rooney of her wages." Opp. at 1; *see also id.* at 10 (using ellipsis in misleading fashion). In fact, the Firm's General Counsel wrote: "there is nothing in the [O]ffer [L]etter that gives [Rooney] the unilateral right to give substantially more notice than the required 90 days and the ability to gerrymander her termination date to enrich herself." [Dkt. No. 18-1] at 1. He also noted that the Offer Letter "expressly state[s] that the [F]irm can waive the notice requirement in whole or in part[,]" which Rooney purposely omitted in the excerpt she partially quotes and otherwise refuses to acknowledge throughout the Opposition. *Id.*; *see also* Heineman Aff., Ex. A at 6.

8

Dated: July 8, 2024

LEERINK PARTNERS LLC,

By Its Attorneys,

*/s/* Christian A. Garcia
Michael L. Rosen (BBO # 559954)
Christian A. Garcia (BBO #703433)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone:  617 832 1000
Facsimile:  617 832 7000
mrosen@foleyhoag.com
cgarcia@foleyhoag.com

## CERTIFICATE OF SERVICE

I, Christian A. Garcia, hereby certify that on this 8th day of July 2024, the foregoing document was served via electronic mail upon the following counsel of record:

Philip J. Gordon, Esq.
Benjamin Flam, Esq.
Gordon Law Group, LLP
585 Boylston Street
Boston, MA 02116
(617) 536-1800
pgordon@gordonllp.com
bflam@gordonllp.com

*/s/*  Christian A. Garcia
Christian A. Garcia