UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
Mairin Rooney,                                      )
                                                    )
                    Plaintiff,                      )
                                                    )
                                                    )    Civil Action No. 1:24-CV-11165-AK
v.                                                  )
                                                    )
Leerink Partners, LLC, et. al,                      )
                                                    )
                    Defendants.                     )
_____)

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**ANGEL KELLEY, D.J.**

Plaintiff Mairin Rooney ("Rooney" or "Plaintiff"), an investment banker, brings this action against her former employer, Leerink Partners, LLC ("Leerink Partners") and the Chairman and Vice Chairman of Leerink Partners, Jeffrey Leerink and Daniel Dubin (collectively "the Defendants"). Rooney alleges that the Defendants failed to fulfill the promises they made to her when they convinced her to leave her job at Goldman Sachs & Co. LLC ("Goldman Sachs") to come work for them. Defendants move to dismiss the case. For the following reasons, the Defendants' Motion to Dismiss [Dkt. 14] is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

Mairin Rooney was working as a Managing Director at Goldman Sachs when she accepted a job offer with SVB Leerink LLC ("SVB Leerink")[1], an investment bank, in April 2021. [Dkt. 9 ¶ 10]. The new role at SVB Leerink offered a title change to "Senior Managing

---

[1] SVB Leerink LLC, owned by Silicon Valley Bank, is the entity that hired Rooney. It was changed to "Leerink Partners LLC" after Silicon Valley Bank collapsed and was purchased by SVB Securities LLC. [Dkt. 9 at 3].

Director"— a promotion to an exclusive rank that Rooney claims motivated her to accept the offer.  [Dkt. 9 at 2, 5].  The offer of employment ("Offer Letter") describes three forms of compensation: an annual salary of $450,000; a special deferred grant award of $5,466,249.80 to replace a forfeited unvested deferred compensation award from Rooney's previous employer; and three minimum guaranteed bonuses of $2,812,500 for 2021, $4,550,000 for 2022, and $2,550,000 for 2023.[2]  [Dkt. 1-3 at 2-4].  At issue in the instant suit are the special deferred grant award, the minimum guaranteed bonuses, and Rooney's expected title as Senior Managing Director.

Both the special deferred grant award and the minimum guaranteed bonuses were subject to an unfunded deferred compensation plan ("the Plan"), which was "established in order to encourage key executives of the Company to achieve higher levels of performance and to remain in the service of the Company."  [Dkt. 1-4 at 2].  The Plan set forth a three-year vesting schedule for the minimum guaranteed bonuses and a five-year vesting schedule for the special deferred grant award, with complete vesting upon eligibility for retirement, death, total disability, or involuntary termination.  [Id. at 7].

According to the Offer Letter, Rooney was to be paid a portion of the special deferred grant award within 30 days of each vesting date for five years and each vesting date was the anniversary of Rooney's start date, August 2, 2021.  [Dkt. 1-3 at 12].  The total amount of the special deferred grant award was $5,466,249.80, the amount Rooney forfeited in unvested deferred compensation when she left Goldman Sachs.  [Id. at 4].  The Offer Letter states that the

---

[2] The Offer Letter and Plan were included with the Complaint when removed to this Court.  [Dkt. 1-3, 4].  However, Plaintiff failed to include these attachments when she later amended her complaint.  [Dkt. 9].  Typically, "[t]he fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint."  Young v. Lepone, 305 F.3d 1, 10–11 (1st Cir. 2002).  The Court will consider the Offer Letter and the Plan at this motion to dismiss stage since they are both incorporated by reference within Plaintiff's Amended Complaint and central to the claims.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

special deferred grant award was "subject to the terms and conditions of [the Defendant Company's] deferred compensation plan." [Dkt. 1-3 at 4, 12].

The minimum guaranteed bonuses were to be paid according to the bonus cycle schedule, generally expected in February of each year, and were "subject to [the Defendant Company's] deferred compensation plan." [Dkt. 1-3 at 2]. In order to receive the minimum guaranteed bonuses, the Offer Letter stipulated that Rooney must either "(a) be an active, full-time employee in good standing when payment is made" *or* (b) must have been "terminated by the Company without Cause[.]" [Id.]. If Rooney was terminated without "Cause," payments would continue to be made on the scheduled date in lieu of severance or any other claims. [Id.]. "Cause" is defined as, *inter alia*, dishonest activity relating to the Defendant Company, permanent enjoinment by any bank regulatory authority, any willful and material violation of any term in the agreement with the Defendant Company, or willful failure to perform duties or follow instruction. [Id. at 3]. The Offer Letter reserved the right for the Defendant Company to determine if "Cause" exists. [Id.]. The Offer Letter also specified that "[a]ny reduction in title shall be deemed a termination without Cause." [Id. at 7]. Under the agreement, any unvested portions would be forfeited upon termination for "Cause" or resignation. [Dkt. 1-4 at 8.]. The Plan is administered by a committee ("the Committee") and provides that claimants can seek review under ERISA for any denied claims. [Id. at 11.].

Rooney alleges that by February 2022, the Defendant Company promoted all lower-ranked bankers to Senior Managing Director, same as her title, as part of a pre-existing plan to eliminate the title of Managing Director. [Dkt. 9 at 2]. The Defendant Company then created a new title superior to Senior Managing Director, Partner, without elevating Rooney's title to this higher position. [Id. at 7]. Rooney, believing these actions diluted her job title and

responsibilities as Senior Managing Director, gave the firm written notice in October 2023 of her intent to resign for "Good Reason" on March 1, 2024—the day after all her minimum guaranteed bonuses became completely vested.  [Id. at 3].  Rooney's intent to resign for "Good Reason" follows a procedure that is outlined in the Plan.  It explains that, before resigning for "Good Reason," a participant must have provided written notice to the Committee along with a description of the conditions and the Company must have failed to cure such conditions within 45 days of such notice, unless such conditions are not curable.  [Dkt. 1-4 at 4].

        By October 2023, Rooney had been working for the Defendant Company for two and a half years and had received only portions of her bonuses.  The Defendant Company subsequently terminated Rooney's position in January 2024, effective immediately, exactly 90 days after Rooney had given written notice of her intent to resign if defects were not cured.  [Id. at 9].  Additionally, the Committee under the Plan, consisting of Defendant Jeffrey Leerink (Chairman and CEO of Leerink), Defendant Daniel Dubin (Vice Chairman and Global Co-Head of Investment Banking and Healthcare Investment Banking), and other Leerink leadership and outside counsel, determined that Rooney had forfeited the remaining minimum guaranteed bonuses and special deferred grant award.  [Id. at 10].

        Rooney subsequently filed suit asserting civil enforcement of the deferred compensation plan, Massachusetts Wage Act violations and state law contract claims, including breach of contract, quantum meruit, fraud in the inducement, and breach of the implied covenant of good faith and fair dealing.  [See Dkt. 1-1 at 10-12].  Rooney argues that the minimum guaranteed bonuses are not subject to ERISA and are the foundation for the state law claims, whereas the special deferred grant award is subject to ERISA.  The Defendants filed a motion to dismiss arguing as a threshold matter that both awards at issue—the minimum guaranteed bonuses and

special deferred grant award—are subject to ERISA, which preempts all state law claims.  In

addition to arguing preemption, the Defendants claim that Counts 1, 2, 4, 5, 6, and 7 are

preempted by ERISA, while arguing that the Amended Complaint fails to state an ERISA claim

for Count 3.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and

actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court

must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d

100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to

distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be

accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard

properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine

whether the factual allegations present a "reasonable inference that the defendant is liable for the

misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."

Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 559 (2007)).

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

court is generally limited to "the complaint, documents attached to it, and documents expressly

incorporated into it[,]" Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014)

(citation omitted), though the court may also consider "matters of public record" and "other matters susceptible to judicial notice," <u>Bingham v. Massachusetts</u>, 616 F.3d 1, 3 n.1 (1st Cir. 2010) (citation omitted).

## III.    DISCUSSION

Rooney brings seven claims against the Defendants: (1) Massachusetts Wage Act – Unpaid Wages; (2) Massachusetts Wage Act – Retaliation; (3) Civil Enforcement of the Deferred Compensation Plan (ERISA); (4) Breach of Contract; (5) Quantum Meruit/Unjust Enrichment; (6) Fraud in the Inducement; and (7) Breach of Implied Covenant of Good Faith and Fair Dealing.  Rooney asserted claims pertain to one or more categories of damages: the minimum guaranteed bonuses, the special deferred grant award, and Rooney's title and role at the Defendant Company.

Before analyzing the merits of these claims, the Court must first evaluate whether the minimum guaranteed bonuses and special deferred grant award on which these claims are based are considered employee benefit plans subject to ERISA.  If the minimum guaranteed bonus and the special deferred grant award are subject to ERISA, the state law claims are preempted.  The Defendants argue that Plaintiff's state law claims (Counts 1, 2, 4, 5, 6, and 7) are all preempted by ERISA.  In the alternative, if ERISA does not preempt the state law claims, the Defendants argue that the claims still fail as a matter of law for failure to state a claim.  Lastly, the Defendants allege that Rooney fails to state a proper claim for civil enforcement of the deferred compensation claim (Count 3).

### A.    ERISA Preemption Analysis

As a threshold question the Court must determine whether the two awards at issue are employee benefit plans pursuant to ERISA.  If they are subject to ERISA's preemption clause,

any related state law claims are preempted.[3]  ERISA's preemption clause provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  Under this clause, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  29 U.S.C. § 1144(c)(1).

Express "ERISA preemption analysis . . . involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan."  Hampers v. W.R. Grace & Co., 202 F.3d 44, 49 (1st Cir. 2000) (citing McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir.1998)).

The terms "employee pension benefit plan" and "pension plan" are defined by statute as the following:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program–
> i.    provides retirement income to employees, or
> ii.   results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).  In determining whether an employer's plan or program is an "employee benefit pension plan" under ERISA, the "express terms" and "surrounding circumstances" of the plan are to be considered.  29 U.S.C. § 1002(2)(A).

### 1.    The Special Deferred Grant Award

The special deferred grant award falls under the definition of an employee benefit plan. Rooney states (and Defendants agree) that the special deferred grant award is subject to ERISA

---

[3] Any claim that relates to Rooney's role at the Defendant Company will also be reviewed under 12(b)(6) below.

as an employee benefit plan.  [See Dkt. 9 at 13 ("[T]he deferred compensation plan is governed by 29 U.S.C. § 1132."); Dkt. 21 at 2].  It is a plan maintained by the employer that "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2)(A); [see Dkt. 1-3 at 4].  The primary purpose of the special deferred grant award is to provide deferred compensation by replacing a similar forfeited award from Rooney's previous employer.  [Dkt. 1-3 at 4]; see Shafer v. Stanley, No. 20 CIV. 11047 (PGG), 2023 WL 8100717, at *18 (S.D.N.Y. Nov. 21, 2023) ("If the deferred compensation program is not a bonus plan, a court should consider only whether the deferred compensation program 'results in' deferred income.").

The second prong of the preemption analysis asks whether the cause of action "relates to" this employee benefit plan.  ERISA preempts state laws with a connection to or that refer to an ERISA-regulated benefits plan "when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action," even if the law is not specifically designed to impact ERISA plans.  Hampers, 202 F.3d at 52 (citations omitted).  Each state law claim that references the special deferred grant award would require interpretation of the ERISA-governed deferred compensation plan, as expressly stated in the Offer Letter.  [Dkt. 1-3 at 4].  Thus, to the extent that the state law claims in Counts 4, 5, 6, and 7 relate to the ERISA-governed special deferred grant award, they are preempted.[4]

### 2.    The Minimum Guaranteed Bonuses

At this stage, Rooney plausibly states a claim that the minimum guaranteed bonuses are not subject to ERISA.  In doing so, Rooney makes two arguments.  First, Rooney argues that the

---

[4] Rooney makes a creative, albeit unavailing, argument that the quantum meruit/unjust enrichment claim is not preempted by ERISA as it regards to the special deferred grant award since it is a common law remedy, not a state law claim.  In the absence of First Circuit authority, this Court looks to other circuits.  Rooney's claim is, in essence, one for benefits that "relates to" the Plan.  See e.g., Peach v. Ultramar Diamond Shamrock, 229 F.Supp.2d 759, 771

minimum guaranteed bonuses are not deferred compensation at all and thus not subject to ERISA. [Dkt. 18 at 13]. Second, she argues that, if the minimum guaranteed bonuses are deferred compensation, they fall under an exemption to employee pension plans under ERISA. On the other hand, the Defendants argue that the bonuses should instead be considered an excess benefit plan—colloquially known as a "top-hat" plan—which describes an unfunded plan an employer maintains "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Even though "top hat" plans are exempt from ERISA's vesting, funding, fiduciary, and participation rules, they are still subject to ERISA's enforcement provisions and preempt any state law claims. See Hampers, 202 F.3d at 46 n. 3.

Rooney's argument that the minimum guaranteed bonuses are not deferred compensation is unavailing. She claims that "there is no language in the Offer Letter that indicates the bonuses are any type of deferred compensation or deferred grant at all." [Id.]. However, the signed Offer Letter states that each annual minimum guaranteed bonus is "subject to the Company's deferred compensation plan," which could result in the deferral of income extending beyond the period of employment. [Dkt. 1-3 at 2-3]. The Plan also contemplates that the deferral of compensation could occur following the termination of employment, offering provisions for distribution and vesting upon eligibility for retirement. [Dkt. 1-4 at 6-7].

Rooney's second argument is more successful. She argues that the minimum guaranteed bonuses fall under an exemption to employee pension plans under ERISA, citing to the

---

(E.D.Mich.2002). Rooney's attempt to evade preemption is unsuccessful as it is "simply a recharacterization of their claim for benefits." Goss v. Firestone Polymers, L.L.C., No. CIV.A. 1:04-CV-665, 2005 WL 1004717, at *23 (E.D. Tex. Apr. 13, 2005) (quoting Albert Einstein Med. Ctr. v. Nat'l Benefit Fund for Hosp. & Health Care Emps., 740 F. Supp. 343, 347 (E.D. Pa. 1989).

Department of Labor's regulatory guidance clarifying the status of plans that pay bonus

compensation:

> [T]he terms "employee pension benefit plan" and "pension plan" shall not include
> payments made by an employer to some or all of its employees as bonuses for
> work performed, unless such payments are systematically deferred to the
> termination of covered employment or beyond, or so as to provide retirement
> income to employees.

29 C.F.R. § 2510.3-2(c).

It is evident that payments under the Plan are not "systematically deferred" to the post

employment period. 29 C.F.R. § 2510.3-2(c). The Plan, by its express terms, defers payments

for a relatively short period of time: The minimum guaranteed bonuses fully vest over a three-

year period. [Dkt. 1-4 at 7]. It is not dispositive that it is possible under the Plan for deferred

compensation to be disbursed after an employee has retired or been terminated, as it is not a

systematic deferral of payments. Rather, it is an incidental occurrence. The Offer Letter expects

payments to be disbursed during the course of employment—one of the requirements to receive

the minimum guaranteed bonus is to "be an active, full-time employee in good standing at the

time this payment is made." [Dkt. 1-3 at 2].

Additionally, bonus plans have been found exempt from ERISA when they exist to

incentivize employee performance and provide "current" income, not to allow employees to

collect retirement income. See e.g., Rivera Sanfeliz v. Chase Manhattan Bank, 349 F. Supp. 2d

240, 247 (D.P.R. 2004) (finding a plan does not fall under ERISA when it is not designed to

provide retirement income, even if payments could occur after retirement); see also Keefe v.

LendUs, LLC, No. 20-CV-195-JD, 2020 WL 3051779, at *2-3 (D.N.H. June 8, 2020) (finding

annual bonus not covered by ERISA, while a deferred settlement amount was properly governed

by ERISA); Hester v. Whatever It Takes, No. 3:21-CV-578-RGJ, 2022 WL 89176, at *5 (W.D.

Ky. Jan. 7, 2022) (explaining that a bonus plan that incentivizes employees is not an ERISA

plan). The purpose of the plan can be determined from the "result of their express terms or

surrounding circumstances." Murphy v. Inexco Oil Co., 611 F.2d 570, 575-76 (5th Cir. 1980).

As already noted, the Offer Letter requires minimum guaranteed bonus payments to be disbursed

while Rooney is "an active, full-time employee in good standing," indicating intent to incentivize

retention and performance, not provide retirement income. [Dkt. 1-3 at 2].

    The Defendants' argument that the minimum guaranteed bonuses are part of a "top hat"

plan, and thus subject to ERISA preemption, is inappropriate at this stage. To determine whether

Rooney's minimum guaranteed bonuses qualify as a "top hat" plan, the court must "conduct a

fact-specific inquiry, analyzing quantitative and qualitative factors in conjunction." Alexander v.

Brigham & Women's Physicians Org., Inc., 467 F. Supp. 2d 136, 143 (D. Mass. 2006) (quoting

Demery v. Extebank Deferred Comp. Plan (B), 216 F.3d 283, 288 (2d Cir. 2000)), aff'd, 513

F.3d 37 (1st Cir. 2008); see also id. at 144 (finding a group was quantitively selected for

purposes of a top hat plan when comprised of 8.7% of the workforce). From the facts alleged in

the Amended Complaint, it is unknown how many employees at Leerink Partners received

similar bonuses or if that number would be sufficient to meet any threshold for a "select group"

of high-level employees—especially given that Rooney alleges "the entire non-administrative

staff" was elevated to Rooney's position as a Senior Managing Director and Rooney was not

promoted to the superior title, Partner. [Dkt. 9 at 6]. This inquiry is better suited following

discovery.

    Accordingly, on the facts alleged and giving every favorable inference to the Plaintiff,

Rooney plausibly states a claim that the minimum guaranteed bonuses fall under the bonus

exemption and are thus not subject to ERISA preemption. See Baumgardner v. Cannon, No. 17-

CV-2727-WJM-NYW, 2018 WL 2722453, at *4 (D. Colo. June 6, 2018) (declining to hold as a matter of law that the bonus agreement is exempted from ERISA, but ruling that Plaintiff plausibly states a claim that the Agreement falls outside ERISA "in the specific context of a motion brought pursuant to Rule 12(b)(6)").  At this stage, the minimum guaranteed bonuses are not subject to ERISA and no state law claims related to the minimum guaranteed bonuses are preempted.

### B.    Failure to State a Claim Analysis

Since the Court's preemption analysis finds that Counts 1, 2, 4, 5, 6, and 7 are not preempted with regard to the minimum guaranteed bonuses, the Court next analyzes whether Rooney stated a claim upon which relief could be granted.  The Court also analyzes whether Rooney stated a claim for civil enforcement under ERISA with regard to the special deferred grant award.  For the reasons explained below, Counts 1 and 6 are dismissed while Counts 2, 3, 4, 5, and 7 remain.

#### 1. Massachusetts Wage Act

##### a.  Unpaid Wage Claims (Count 1)

Rooney alleges violations of the Massachusetts Wage Act ("the Wage Act"), Mass. Gen. Laws ch. 149, § 148 for failure to pay the minimum guaranteed bonuses for 2021, 2022, and 2023.  Rooney claims that the minimum guaranteed bonuses are wages, not a bonus, under the Wage Act and they must be paid to her.  The Defendants deny that the Wage Act applies in this case, arguing that the compensation is a bonus that falls outside the Wage Act's protections.

The Wage Act requires employers to pay employees earned wages within a specified amount of time.  Mass. Gen. Laws ch. 149, § 148 para. 1.  The Wage Act's purpose is "to prevent the unreasonable detention of wages."  Weems v. Citigroup Inc., 900 N.E.2d 89, 92

(Mass. 2009) (quoting Boston Police Patrolmen's Ass'n, Inc. v. City of Boston, 761 N.E.2d 479, 481 (Mass. 2002)) (internal quotation marks omitted). The term "wages" is not defined, but courts have held that a bonus that is "discretionary or contingent upon the employee remaining with the company" is not considered a wage subject to the Wage Act. Smith v. Unidine Corp., No. SUCV2015-3417, 2017 WL 4411249, at *4 (Mass. Super. Ct. July 25, 2017) (citing Weems, 761 N.E.2d at 153-154); see also Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 193 (D. Mass 2010) (finding an employee's "Bonus Plan and Retention Plan" did not constitute "'wages' under the MA Wage Act" because it was "compensation 'triggered by contingencies'" and "thus outside the scope of the [MA] Wage Act" (quoting Dennis v. Jager, Smith & Stetler, P.C., No. 984974G, 2000 WL 782946, at *1 (Mass. Super. Ct. May 11, 2005))); Sheedy v. Lehman Bros. Holdings, Inc., No. 11-11456-RGS, 2011 WL 5519909, at *4 (D. Mass. Nov. 14, 2011) (holding unvested "incentive payment[s] . . . contingent upon [the employee's] continued employment" are "wage[s]" within the meaning of the [MA] Wage Act).

The minimum guaranteed bonuses, as provided by the Offer Letter, are contingent on Rooney being "an active, full-time employee in good standing at the time this payment is made" or subject to "terminat[ion] by the Company without Cause." [Dkt. 1-3 at 3]; Weiss v. DHL Exp., Inc., 718 F.3d 39, 47 (1st Cir. 2013) (finding a bonus was not a wage under the Wage Act, because the bonus "was contingent on either continued employment, with his performance remaining in good standing, or the Committee's determination that his termination was without good cause"). Rooney's argument that the minimum guaranteed bonuses are wages because they are "determined, due and unpaid" falls short. See Roche v. Morgan, Inc., 882 F. Supp. 2d 247, 255 (D. Mass. 2012) ("[T]he fact that a payment is non-discretionary is not, alone, sufficient to render it a wage under the Act."); see also Sheedy, 2011 WL 5519909, at *4 ("The law is clear

that incentive or other bonus compensation is outside the scope of the Wage Act[.]").  The Court

grants the Defendants' motion to dismiss the first Wage Act claim (Count 1 – Unpaid Wages).

### b. Retaliation Claim (Count 2)

The Wage Act includes an anti-retaliation provision, which provides that "[n]o employee

shall be penalized by an employer in any way as a result of any action on the part of an employee

to seek his or her rights under the wages and hours provisions of this chapter."  Mass. Gen. Laws

ch. 149, § 148A.  Rooney alleges violations of § 148A, stemming from the Defendant

Company's alleged retaliation against her for complaining about non-payment of compensation.

§ 148A.  Rooney claims that, because of her notice of intent to resign, the Defendants shortened

her notice period, withheld portions of the minimum guaranteed bonus, and harmed her

reputation with clients.  Rooney alleges that she was terminated in retaliation for complaining

about non-payment of compensation.  At the motion hearing, Defendants argued that the Wage

Act's anti-retaliation provision does not impose personal liability upon officers but conceded that

liability could be found against the Defendant Company.

Retaliation under the Wage Act includes three elements: "(1) the plaintiff engaged in

statutorily protected activity, and (2) his employer thereafter subjected him to an adverse

employment action (3) as a reprisal for having engaged in the protected activity."  Blackie v.

Maine, 75 F.3d 716, 722-23 (1st Cir. 1996).[5]  The third element requires there to be "a causal

connection . . . between the protected conduct and the adverse action."  Id. at 723 (internal

quotation marks and citations omitted).  Termination is a "quintessential example of the kind of

---

[5] The plaintiff's claim in Blackie rested upon 29 U.S.C. § 215(a)(3), better known as the Fair Labor Standards Act
(FLSA).  75 F.3d at 719-20.  The First Circuit has interpreted Mass. Gen. Laws ch. 149 § 148A and the FLSA's
anti-retaliation provision as requiring a plaintiff to prove substantively the same elements.  See Travers v. Flight
Servs. & Sys., Inc., 808 F.3d 525, 531 (1st Cir. 2015) (referencing FLSA anti-retaliation provision when defining
the elements of a § 148A claim).

penalization against which the retaliation statute is meant to protect." <u>Gillis v. Lowell Health Care Ctr.,</u> No. CV 16-10497-NMG, 2016 WL 4074138, at *2 (D. Mass. July 29, 2016).

To withstand a motion to dismiss on a retaliation claim, Rooney "must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case." <u>Rodriguez-Vives v. P.R. Firefighters Corps of P.R.,</u> 743 F.3d 278, 286 (1st Cir. 2014) (quoting <u>Rodríguez-Reyes v. Molina-Rodríguez,</u> 711 F.3d 49, 54 (1st Cir. 2013)) (internal quotation marks omitted).  In other words, the proper inquiry at this stage is "whether the complaint alleges facts that, taken as true and viewed in the light most favorable to plaintiff, plausibly suggest claims of retaliation." <u>Jiang v. Kobe Japanese SteakHouse, Inc.,</u> No. CV 22-11867-FDS, 2024 WL 421995, at *5 (D. Mass. Feb. 5, 2024).  Rooney's allegations are sufficient to plausibly suggest retaliation.

As to the issue of individual liability under the Wage Act, liability attaches to "any officers or agents having the management of such corporation are considered to be employers who may be individually liable for violations of the Act."  Mass. Gen. Laws ch. 149, § 148 para. 6; <u>see</u> <u>Pineda v. Skinner Servs., Inc.,</u> No. CV 16-12217-FDS, 2020 WL 5775160, at *19 (D. Mass. Sept. 28, 2020) ("[§148] imposes personal liability on people . . . who have 'assumed and accepted as individuals significant management responsibilities over [a] corporation . . . , particularly in regard to the control of finances or payment of wages.'" (quoting <u>Segal v. Genitrix, LLC,</u> 87 N.E.3d 560, 576 (Mass. 2017)); <u>Norton v. Archetype Consulting, Inc.,</u> No. CV 20-11299-GAO, 2023 WL 3884976, at *2 (D. Mass. June 8, 2023) (holding plaintiff stated a claim under § 148 against employer "who oversaw, among other things, [the company's] payroll function").  Rooney has sufficiently alleged that Leerink and Dubin were managers and participated in the policy formation of the Company.  <u>See</u> <u>Norton,</u> 2023 WL 3884976, at *2

15

("Courts have defined a person having the management of such corporation as one who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation.") (internal quotation marks and citations omitted).  Accordingly, the Court denies the Defendants' motion to dismiss the second Wage Act claim (Count 2 – Retaliation).

## 2. Civil Enforcement of the Deferred Compensation Plan (Count 3)

Rooney asserts that the Defendants failed to make payment of her special deferred grant award, in breach of the deferred compensation plan under ERISA.  29 U.S.C. § 1132. Specifically, Rooney alleges that the Defendants failed to honor Rooney's "Good Reason" resignation, which deemed her termination an "Involuntary Termination of Employment" under the deferred compensation plan.  The Defendants argue that the ERISA claim is unavailing because Rooney failed to exhaust administrative remedies and failed to plead "Good Reason." They also allege that the claim fails against Leerink and Dubin in their individual capacities.

The Defendants first argue that Rooney lacks a cause of action under ERISA because Rooney failed to exhaust her administrative remedies.  [Dkt. 15 at 22].  Generally, courts have held that "a plaintiff seeking to recover benefits or enforce rights under an ERISA plan must exhaust available administrative remedies available under the ERISA-governed plans before filing suit in federal court."  Cruz v. Bristol Myers Squibb Co. PR, 777 F. Supp. 2d 321 (D.P.R. 2011) (citation omitted), aff'd, 699 F.3d 563 (1st Cir. 2012); see also Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988) (holding that a former employee seeking disability benefits was required to exhaust administrative remedies under the Plan unless evidence showed the plan's review procedure would have been futile or inadequate).  However, an exception to the exhaustion requirement exists when "a claimant has not received a notice of denial or has received inadequate notice."  Kodes v. Warren Corp., 24 F. Supp. 2d 93, 102 (D.

Mass. 1998); see also McLean Hosp. Corp. v. Lasher, 819 F. Supp. 110, 123 (D. Mass. 1993)

(noting exhaustion is the norm unless  (1) "resort to administrative procedures would be

futile . . . , or the remedy inadequate . . . ; (2) if the claimant would suffer irreparable harm . . . ;

or (3) if the claimant is wrongfully denied meaningful access to the procedures") (citations

omitted); DePina v. Gen. Dynamics Corp., 674 F. Supp. 46, 49 (D. Mass. 1987) (finding an

exception to the exhaustion requirement when "the claimant is wrongfully denied meaningful

access to the procedures").

      Rooney has not alleged that she exhausted administrative remedies, but she has alleged

deficient notice.  The ERISA-governed plan states that when a claim is denied, the Committee

must provide the claimant with notice containing "the reasons for the denial," "provisions of the

Plan upon which[] the denial was based," how to "submit his or her claim for review,"

information needed to "perfect his or her claim," and statement of "right to bring a civil action."

[Dkt. 1-4 at 11].  Rooney claims that the Committee failed to provide notice of her internal

appeal rights and her right to pursue legal claims pursuant to the mandate in the Plan.  At this

early stage, Rooney has made a colorable claim that Defendants did not comply with the notice

rights and procedure.  See DePina, 674 F. Supp. at 50 (holding that deficiency in denial notice

and failure to advise of review procedures excused plaintiff from resorting to administrative

procedures prior to federal suit).

      The Defendants also argue that Leerink and Dubin cannot be sued individually.  The First

Circuit has held that "[t]he proper party defendant in an action concerning ERISA benefits is the

party that controls administration of the plan." Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir.

1998) (quoting Garren v. John Hancock Mut. Life Ins. Co., 144 F.3d 186, 187 (11th Cir. 1997)).

The First Circuit has also said that "[i]f an entity or person other than the named plan

administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." Gomez-Gonzales v. Rural Opportunities Inc., 626 F.3d 654, 665 (1st Cir. 2010).  The Plan is administered by a Committee, which includes Leerink.  [See Dkt. 1-4 at 3, 11].  Thus, Rooney sufficiently alleged facts that enable her to bring a claim against Leerink.  Rooney also alleges that Dubin joined a Committee meeting that determined Rooney had forfeited all unvested deferred compensation awards under the Plan.  [Dkt. 9 ¶ 40].  Since both Leerink and Dubin, along with the Committee, had decision-making authority regarding Rooney's unvested deferred compensation awards, the Court finds that Rooney has alleged sufficient facts to withstand the individual Defendants' motion to dismiss.  Accordingly, the Court denies the Defendants' motion to dismiss the civil enforcement of ERISA claim (Count 3) as to the Company and the individual defendants.

### 3. Breach of Contract (Count 4)

Rooney alleges that the Defendants breached the agreement by failing to pay her the minimum guaranteed bonuses as set forth in the Offer Letter.  [Dkt. 9 at 14].  Rooney also alleges the Defendants breached their promise regarding her role as Senior Managing Director.[6] [Id.].  To state a claim for breach of contract, a plaintiff must allege the existence of a valid contract, the defendant's breach of contract, and damages that resulted from the defendant's breach.  See Stagikas v. Saxon Mortg. Servs., Inc., 795 F. Supp. 2d 129, 136 (D. Mass. 2011).

While both parties agree there was a valid agreement, they disagree on whether there was a breach.  Rooney claims that the Defendants "failed to pay [her] the entirety of the guaranteed wages as set forth in her offer letter, electing instead to convey a substantial portion in contingent deferred compensation cash payments and unvested RSUs of its predecessor stock, instead of

---

[6] While all four state law claims pertain to the minimum guaranteed bonuses (Counts 4, 5, 6, and 7), three state common law claims also pertain to Rooney's role at the Defendant Company (Counts 4, 6, and 7).

cash or its equivalent." [Dkt. 9 at 5]. She also alleges that the Defendant Company breached its promise to give her an exclusive role titled "Senior Managing Director." [Id. at 6]. The Defendants argue that the minimum guaranteed bonuses were "subject to the terms and conditions of the [Firm]'s deferred compensation plan including those relating to vesting, payment and forfeiture." [Dkt. 15 at 13]. The Defendants further argue that the "Offer Letter does not state that [the minimum guaranteed bonuses] would be paid in cash or its equivalent." [Id.]. This Court disagrees with the Defendants.

A central issue here is whether Rooney was terminated. Defendants argue that Rooney resigned, while Rooney maintains she was terminated. [Dkt. 15 at 16]. The distinction is crucial because, in order to receive the minimum guaranteed bonuses, Rooney had to "(a) be an active, full-time employee in good standing at the time this payment is made, or (b) have had [her] employment terminated by the Company without Cause [. . .] prior to such payment." [Dkt. 1-3 at 2]. Rooney intended on being a full-time employee until at least March 1, 2024, as evidenced by her intent to resign for "Good Reason." Instead of curing the alleged defects,[7] the Defendant Company accepted Rooney's resignation but cut the notice period short, as permitted by the Offer Letter. It is not clear to the Court whether waiving part of the notice period is effectively a termination. If the waiver to the notice period constitutes a termination, the next inquiry is if it was with or without Cause, a determination that rests solely in the Company's discretion.[8] [See Dkt. 1-3 at 4] ("Whether Cause exists under this Agreement shall be determined by the Company, in its sole discretion."); [see also Dkt. 1-3 at 7] ("Any reduction in title shall be

---

[7] As stated in the Amended Complaint, the alleged defects pertain to "both the pay and title issues." [Dkt. 9 at 3].

[8] The Court understands that the term "Good Reason" does not appear in the Offer Letter, as the Defendants have repeatedly suggested. However, it does appear in the Plan, to which the bonuses are subject to. At this stage, the Court makes no determination on whether Rooney had "Good Reason," only that Rooney has alleged sufficient facts to support that she was terminated without "Cause."

deemed a termination without Cause.").  There are no allegations, either in the Complaint or the

Motion to Dismiss, that indicate the Defendants discussed whether Cause exists.

Rather, the Defendant Company met on February 9, 2024, and "determined that all of

Ms. Rooney's 'unvested deferred compensation awards are forfeited under the plan.'"  [Dkt. 9 ¶

40].  However, this meeting occurred after Rooney's notice period was cut short and she left the

Company.  Thus, it was impossible to terminate Rooney for "Cause" since the Defendants do not

allege that the Defendant Company ever met prior to her departure.  The Court also finds that the

Amended Complaint is silent on how the bonuses should be paid.  As such, this Court finds that

the Amended Complaint alleges sufficient facts that allow Rooney to bring forth a breach of

contract claim.  Accordingly, the Court denies the Defendants' motion to dismiss the breach of

contract claim (Count 4).

### 4. Quantum Meruit and Unjust Enrichment (Count 5)

In Massachusetts, "claims for quantum meruit and unjust enrichment are treated

similarly," as both have essentially the same elements.  Lockwood v. Madeiros, 506 F. Supp. 3d

73, 80 (D. Mass. 2020).  To succeed on a claim of unjust enrichment, a plaintiff must show that

(1) they conferred a benefit on the defendants; (2) the defendants had an appreciation or

knowledge of that benefit; and (3) under the circumstances, the defendants' acceptance or

retention of the benefit would be inequitable without payment for its value.  Id. at 80.  Similarly,

a claim for quantum meruit requires a plaintiff to show that (1) she rendered services to the

defendants; (2) the defendants accepted services; (3) she expected reasonable compensation; and

(4) the measure of reasonable value of services she provided.  Id. at 80-81.  Both claims are not

available when the plaintiff has an adequate remedy under the law.  See Scarpaci v. Lowe's

Home Ctr., LLC, 212 F. Supp. 3d 246, 253 (D. Mass. 2016).  However, "[i]t is accepted practice

to pursue both breach of contract and unjust enrichment claims at the pleading stage," even if a plaintiff can only recover under one of these theories.  Barnia v. Kaur, 646 F. Supp. 3d 154, 169 (D. Mass. 2022).

Plaintiff claims that she provided services and the Defendants retained her compensation, specifically the minimum guaranteed bonuses, that was intended for these services.  She has also alleged that she received "worthless" stocks instead of the cash that she anticipated.  Viewing these allegations in the light most favorable to Rooney, the Court holds that Plaintiff has made out a plausible claim for quantum meruit/unjust enrichment.  Accordingly, the Court denies the Defendants' motion to dismiss the quantum meruit/unjust enrichment claim (Count 5) at this juncture.

### 5. Fraud in the Inducement (Count 6)

In her Amended Complaint, Rooney claims that the Defendants induced her to leave her job at Goldman Sachs to work for them and that there were a series of omissions regarding her title and compensation.  [Dkt. 9 at 15].  A fraud in the inducement claim has five elements: "(1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with knowledge of its untruth; (4) it was intended that it be acted upon[ ] and . . . was in fact acted upon; and (5) damages directly resulted therefrom." Hopkinton Friendly Serv., Inc. v. Glob. Companies LLC, 384 F. Supp. 3d 179, 190 (D. Mass. 2019) (quoting Smith v. Zipcar, Inc., 125 F. Supp. 3d 340, 344 (D. Mass. 2015)).  Defendants argue, and this Court agrees, that Rooney has not sufficiently pleaded all five elements.  A claim of fraud, including fraud in the inducement, "must also satisfy the particularity requirements set forth in Fed. R. Civ. P. 9(b), mandating 'specifics about the time, place, and content of the alleged false representations.'"  Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir.

2013) (quoting Juárez v. Select Portfolio Servicing Inc., 708 F.3d 720, 731 (1st Cir. 2007)).

Rooney's allegations fall short of the heightened pleading requirements demanded by Fed. R.

Civ. P. 9(b).  Nothing in her Amended Complaint indicates that the Defendants had the requisite

scienter, nor does it identify facts that suggest the Defendants knew its promise of title and

compensation was false or misleading at the time of offering Rooney the position.  See N. Am.

Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule

9(b) requires . . . identifying the basis for inferring scienter."); Greenstone v. Cambex Corp., 975

F.2d 22, 25 (1st Cir. 1992) (to satisfy Rule 9(b)'s heightened pleading standard, the complaint

must "set[] forth specific facts that make it reasonable to believe that defendant knew that a

statement was materially false or misleading"), superseded by statute on other grounds, Private

Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, as recognized in

Cardinale, 567 F.3d at 13.  This is supported by the fact that the alleged diminution of role did

not occur until several months after Rooney was hired.

  Nor is Rooney's claim compelling that Defendants made a series of omissions to entice

Rooney to join the Defendant Company.  A fraud by omission claim "requires both concealment

of material information and a duty requiring disclosure."  Squeri v. Mount Ida Coll., No. CV 18-

12438-RGS, 2019 WL 2249722, at *3 (D. Mass. May 24, 2019), aff'd, 954 F.3d 56 (1st Cir.

2020) (quoting Sahin v. Sahin, 435 Mass. 396, 402 n.9 (2001)).  A duty to disclose typically

exists where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are

matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous

statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to

the essence of, the transaction."  Id. (quoting Knapp v. Neptune Towers Assocs., 892 N.E.2d

820, 824 (Mass. App. Ct. 2008)).  Since Rooney has not alleged a fiduciary duty or identified the

specific "series of omissions" made by the Defendants, her attenuated allegations cannot carry the day. Accordingly, the Court grants the Defendants' motion to dismiss the fraud in the inducement claim (Count 6).

### 6. Breach of Implied Covenant of Good Faith and Fair Dealing (Count 7)

Rooney claims that the Defendants failed to act with good faith in the performance of their contractual duties by implementing the new promotion scheme and withholding her expected compensation. Defendants argue they simply exercised an express contractual power to change Rooney's job duties and waive the resignation notice requirement. In Massachusetts, "[e]very contract implies good faith and fair dealing between the parties to it." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 583 N.E.2d 806, 820 (Mass. 1991)) (internal quotation marks omitted). "The implied covenant provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (quoting Drucker v. Roland Wm. Jutras Assocs., 348 N.E.2d 763, 765 (Mass. 1976)). In an employment context, the purpose of the implied covenant is to "to prevent an employer from being unjustly enriched by depriving the employee of money that he had fairly earned and legitimately expected." Suzuki v. Abiomed, Inc., 253 F. Supp. 3d 342, 348 (D. Mass. 2017) (quoting Kravetz v. Merchs. Distribs., Inc., 440 N.E.2d 1278, 1281 (Mass. 1982)). Thus, "[t]he essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016).

The Amended Complaint alleges that the Defendant Company terminated Plaintiff in bad faith before Plaintiff received her due compensation  Specifically, Rooney alleges that the Defendant Company purposefully waived her notice period to withhold her guaranteed bonuses. See, e.g., Stello v. Ark Eng'g & Tech. Servs., Inc., No. CV 15-10590-PBS, 2015 WL 4254080, at *1 (D. Mass. July 14, 2015) ("Employers cannot, for example, deprive sales agents of a commission by terminating the contractual relationship when the agent is on the brink of successfully completing the sale.") (internal quotation marks and citations omitted).  At this stage, Plaintiff has sufficiently alleged that the Defendant Company breached the implied covenant of fair dealing in their agreement with Plaintiff.  The allegations support a claim that the Defendant Company "deprived [Rooney] of the fruits of her labor already substantially earned . . . ." Green v. D2L Ltd., 516 F. Supp. 3d 43, 49 (D. Mass. 2021) (internal quotation marks and citations omitted).  Accordingly, the Court denies the Defendants' motion to dismiss the implied covenant of good faith and fair dealing claim (Count 7).

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss [Dkt. 9] is **GRANTED IN PART** and **DENIED IN PART**.  Counts 1, 2, 4, 5, 6, at 7 as they relate to the special deferred grant award are **DISMISSED**.  Counts 1 and 6 as they relate to the minimum guaranteed bonuses are **DISMISSED**.  Count 3 survives as it relates to the special deferred grant award and Counts 2, 4, 5, and 7 survive as they relate to the minimum guaranteed bonuses and other claims related to her title.

**SO ORDERED.**

Dated: February 6, 2025                             /s/ Angel Kelley
                                                    Hon. Angel Kelley
                                                    United States District Judge

24