**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAIRIN ROONEY,<br><br>Plaintiff,<br><br>v.<br><br>LEERINK PARTNERS LLC, JEFFREY LEERINK and DANIEL DUBIN<br><br>Defendants. | **Civil Action No.: 1:24-cv-11165-AK** |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO ENJOIN ARBITRATION**

*(Leave to file reply brief granted June 23, 2026)*

Plaintiff's[1] principal argument against an injunction is that the Firm forced her to litigate her claims in two separate forums through a labyrinth of contractual forum provisions foisted upon her. That argument is premised on the fallacy that Plaintiff was required to bring her initial claims in court. There was no such requirement. The Offer Letter's mandatory arbitration provision gave Plaintiff a single forum in which to bring all of her employment-related claims. Rather than do so, Plaintiff deliberately <u>chose</u> to file this action in state court, amend her complaint to assert a claim for deferred compensation plan (the "Plan") benefits only after removal, and then wait more than two years before initiating the FINRA arbitration. These were strategic choices, not contractual mandates, and Plaintiff must now live with the consequences. Beyond this threshold problem, Plaintiff attempts to justify her actions with misdirection, advancing a narrative that the parties "shared" an "understanding" from the outset that her discrimination claims would proceed separately at FINRA. That theory is refuted by her own timeline: she asserts early in her opposition that Defendants removed this action while her Charge was pending at the MCAD, only to concede later that she did not file her Charge until August 2024, months after removal. (Doc No. 88) at 3, 14. There was no shared understanding. The Court should reject Plaintiff's attempts to rewrite history and hold her to the tactical choices she made.

## I. <u>**Plaintiff Chose Court Despite the Mandatory Arbitration Provision.**</u>

Plaintiff was not contractually required to bring her "compensation, Wage Act, [and] contract" claims in court. (Doc. No. 88) at 2. To the contrary, the Offer Letter's arbitration provision required her to submit those claims to arbitration:

> [A]ny and all disputes arising out of or relating to your employment or the termination of your employment with the [Firm], including any statutory claims based on alleged discrimination or harassment, including without

[1] Capitalized terms not defined herein bear the meanings ascribed to them in (Doc No. 83).

> limitation sexual harassment, will be submitted to and resolved exclusively by a panel of arbitrators from [FINRA] ….

(Doc No. 70-14) at 1216. By its plain terms, this provision requires arbitration of "any and all" employment disputes. That includes Plaintiff's allegation that the Firm "failed and/or refused to pay Plaintiff her full guaranteed wages for 2021, 2022 and 2023, in violation of the Massachusetts Wage Act[,]" (Doc No. 1-1) at ¶ 35, the purpose of which is "'to protect employees and their right to wages.'" *Mui v. Massachusetts Port Authority*, 89 N.E.3d 460, 462 (Mass. 2018) (citations omitted). It includes her allegation that the Firm violated the Wage Act by retaliating against her. (Doc No. 1-1) at ¶¶ 37-41. It includes her allegation that the Firm "failed and/or refused to pay Plaintiff her guaranteed wages as set forth in her Offer Letter" and "has breached [its] promises regarding Plaintiff's role as Senior Managing Director." *Id.* at ¶¶ 42-43. It includes her allegation that the Firm was unjustly enriched by Plaintiff's provision of services as an employee of the Firm. *Id.* at ¶¶ 47-51. It includes her allegation that the Firm "made a series of misrepresentations with regard to both her title and her compensation" during the Firm's recruiting Plaintiff. *Id.* at ¶¶ 52-54. And it includes her allegation that the Firm "failed to act with good faith and fair dealing in the performance of its duties to Plaintiff" during her employment. *Id.* at ¶¶ 55-57.

All of these claims – which comprise the entirety of her initial complaint – were subject to mandatory arbitration, and there was an "available forum in which all claims could have been brought together[.]" (Doc. No. 88) at 9 (emphasis omitted). Under the Offer Letter, that forum was FINRA. Yet Plaintiff <u>chose</u> to file suit in court. When the Firm elected not to enforce the mandatory arbitration provision and removed the action from Massachusetts Superior Court to this Court under the doctrine of complete preemption, the forum in which she could have prosecuted all of her claims against Defendants became this Court. *See* (Doc No. 1) at ¶¶ 5-13.

The fact that the Plan's forum selection clause required[2] that actions "relating to benefits under this Plan" be brought in Massachusetts state or federal court, (Doc No. 70-48) at § 7.5, does not alter the fact that Plaintiff made tactical decisions that have led the parties to this point. Despite her eleventh-hour protestations to the contrary, Plaintiff's original complaint contained no claims for benefits under the Plan. (Doc No. 1-1). That pleading asserted only state statutory and common law claims related to her employment and separation. Plaintiff's ERISA claim was brought only as an afterthought following the Firm's removal from state court and motion to dismiss this action on preemption grounds, when Plaintiff amended her complaint to add an ERISA claim seeking benefits under the Plan. *See* (Doc No. 1); (Doc No. 7); (Doc No. 9). Even then, Plaintiff continued to pursue other state law claims that she still insists are not preempted by ERISA.[3]

Plaintiff's reference to other forum selection clauses is a red herring. *See* (Doc No. 88) at 1-2. The forum selection clause in her employee forgivable loan relates to "any suit for the enforcement of this Note." (Doc No. 70-14) at 1220-21. No party has brought any claim related to enforcement of the note. Similarly, the "<u>Remedies.</u>" section of the Offer Letter applies "[i]n the event [Plaintiff] breach[es] [her] obligations" under the Offer Letter. *Id.* at 1216. No party has brought any claim relating to Plaintiff's breaches of the Offer Letter.

---

[2] This forum selection clause is legally required by ERISA. 29 U.S.C. § 1132(a)(1) entitles a participant to bring a civil action to recover benefits, enforce rights, or clarify rights and 29 U.S.C. § 1132(e)(1) confers concurrent jurisdiction over those claims in federal and state courts.

[3] Plaintiff's argument that she was required to bring her "benefits claims" in court under the terms of the Plan concedes a point that she has vehemently opposed. At the motion to dismiss and summary judgment stages, Plaintiff has argued that her state law claims are not preempted by ERISA. *See* (Doc No. 18) at 13-15; (Doc No. 77) at 34-37; (Doc No. 89) at 5-6. Now she argues that the Firm's ERISA Plan required her to bring her claims in court because her claims "relat[e] to benefits under this Plan." If Plaintiff's claims relate to benefits under the Firm's ERISA Plan, those state law claims are preempted and Defendants are entitled to summary judgment.

This motion is about Plaintiff's decisions. She chose to bring claims subject to a mandatory arbitration provision in state court. She chose to file charges of discrimination before the MCAD and EEOC after Defendants moved to dismiss her court claims. She chose to voluntarily dismiss her charges of discrimination after extracting discovery from Defendants. She chose to let the deadline to amend her pleadings in this case lapse without any action or suggestion on her part that she intended to prosecute more claims against Defendants. She chose to prosecute those claims she wished to pursue in this forum. And she chose to initiate a FINRA arbitration to prosecute still other claims against Defendants more than two years after she commenced this dispute.

Plaintiff's opposition, nevertheless, seeks to blame Defendants for her own choices. She argues that Defendants "invoked the Plan's forum-selection clause in this very case when it suited them …." (Doc No. 88) at 2. She cannot support this assertion. Plaintiff chose the forum. Defendants exercised their statutory rights to remove a case to this Court on preemption grounds.

Plaintiff's argument that there was a "shared understanding" that Plaintiff could prosecute separate claims in two different forums is baseless. *See id.* at 3. Modifying a protective order to preclude Plaintiff from disclosing confidential documents to "FINRA or any other regulatory body or agency" does not establish Defendants' assent to be sued in multiple forums. *See id.* at 3; (Doc No. 88-1) at ECF pg. 16. Prohibiting deposition discovery on claims that are not being prosecuted does not establish Defendants' assent to be sued in multiple forums. *See* (Doc No. 88) at 3. Electing not to compel arbitration does not establish Defendants' assent to be sued in multiple forums. *See id.* at 3. And waiting two months to move to enjoin the FINRA arbitration certainly does not establish Defendants' assent to be sued in multiple forums. *See id.* at 3.

Defendants are not "seeking to avoid" anything. *See id.* at 1. Plaintiff is the claimant. She chooses which claims to bring, where to bring them, and when to bring them. Defendants can only respond. Enjoining the arbitration is not inequitable; it is the consequence of Plaintiff's decisions.

## II. Plaintiff Mischaracterizes the Claim Splitting Case Law.

Plaintiff argues that "[c]laim-splitting is a doctrine of judicial economy" and that "[i]t does not and cannot operate to destroy claims altogether." (Doc No. 88) at 8 (citing nothing). On the contrary, as this Court has stated, "[t]he purpose of the rule is to 'requir[e] a plaintiff to address all related claims in one action and protect[] the defendant from the necessity of litigating similar claims in separate actions. Additionally, the prohibition on claim splitting, like res judicata, serves to conserve judicial resources, prevent inconsistent decisions and encourage reliance on judicial decisions." *Fernandes v. Quarry Hills Assocs., L.P.*, 2010 U.S. Dist. LEXIS 136884, at *28 (D. Mass. Dec. 28, 2010) (citations omitted). The claim splitting doctrine can have the practical effect of destroying claims where a plaintiff surfaced those claims at a time where moving for leave to amend the complaint in the original action would prove fruitless, such as this case.[4]

Plaintiff argues that "if Defendants truly sought a single forum, they could consent today to litigate the arbitrated claims before this Court and waive the arbitration clause they drafted." (Doc No. 88) at 2-3. Plaintiff's posturing is the wrong question. The right question, which is not

[4] *See Ecolab Inc. v. IBA, Inc.*, 810 F. Supp. 3d 183, 194 (D. Mass. 2025) ("[Plaintiff] could have and should have filed a motion to amend their complaint after the order on their initial motion to compel was docketed, instead, it filed an entirely new action here in Massachusetts."); *Labranche v. United States Liberty Ins. Co.*, 786 F. Supp. 3d 262, 276 (D. Mass. 2025) ("Plaintiffs made a number of strategic choices and the doctrine of claim splitting, along with the principles of claim preclusion, requires them to live with those choices."); *Sargent v. Mainehealth*, 2022 U.S. Dist. LEXIS 105621, at *45 (D. Me. June 14, 2022) (finding consolidation of two actions inappropriate "because it would allow [plaintiff] to bring her [second action complaint] without seeking leave to amend … [and] would further give [plaintiff] an end-run around the Court's scheduling order"); *Fernandes*, 2010 U.S. Dist. LEXIS 136884, at *29 (finding plaintiffs' FLSA claims "should have been included in their state court complaint and brought in via a timely motion to amend").

presently before this Court and certainly not answered in Plaintiff's opposition, is whether Plaintiff can meet the standards of Fed. R. Civ. P. 15 and 16 to amend her complaint. She cannot.

Plaintiff's remaining arguments are meritless. While conceding that the FINRA claims overlap with her claims in this action, Plaintiff argues that her FINRA filing asserts "distinct statutory, rule based, and tort claims, with different elements, defenses, and remedies than the contract, Wage Act, and ERISA plan counts here." *Id.* at 4. This point is of no legal significance. "The First Circuit has adopted a transactional approach to determine whether causes of action are sufficiently related" which reduces to "'whether the facts are related in time, space, origin, or motivation.'" *Labranche,* 786 F. Supp. 3d at 276 (citations omitted). There is no dispute that the claims Plaintiff brings in the FINRA arbitration meet this standard. Nor can Plaintiff escape the result through the exception to claim splitting recognized in *Labranche*. *See* (Doc No. 88) at 10. There can be no question that the evidence on which Plaintiff bases her allegations in the FINRA arbitration was known to her during the pendency of the first action. *See Havercombe v. Dep't of Educ. of the Commonwealth*, 250 F.3d 1, 5-6 (1st Cir. 2011) (applying claim preclusion where "[p]laintiff does not specifically allege in his amended [second action] complaint that any new facts occurred after 1997 indicative of additional causes of action under Title VII and the ADEA distinct from those pleaded and adjudicated in [the first action]"); (Doc No. 82-1) (Plaintiff basing her allegations in the FINRA Arbitration on facts pled in her August 2024 MCAD Charge).

## III. <u>The Remaining Injunction Factors Favor Enjoining the FINRA Arbitration.</u>

"A district court may grant injunctive relief to a prevailing party to correct an injury which would, absent an injunction, be irreparable." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir. 1989). For the reasons explained herein and in (Doc No. 83), the doctrines of claim

splitting and waiver preclude the FINRA arbitration from moving forward. The only analysis remaining, therefore, is the irreparability of the harm if the FINRA arbitration were to proceed.

Plaintiff argues that the harm Defendants would endure if the FINRA arbitration proceeded would be “traditional economic damages [that] can be remedied by compensatory awards” and “cost and inconvenience” that is “compensable, manageable, and routine.” (Doc No. 88) at 15-17 & n.2. That assessment fundamentally misunderstands the nature of the harm. The prejudice Defendants face is not simply the cost of litigation, but the manifestly unfair burden of being forced to litigate the same operative facts at the same time in two forums with no assurance that those tribunals will reach consistent results. Simultaneous proceedings would compel Defendants to expend duplicative time, money and effort marshalling witnesses, preparing exhibits, briefing motions, and mounting defenses on the same core factual disputes in parallel. That burden cannot be undone after the fact by any monetary award.

More critically, the risk of inconsistent outcomes is not speculative; it is an inherent feature of parallel litigation before a court and an arbitration panel each applying different evidentiary rules, procedural mechanisms, and legal standards to the same underlying facts. The danger that a FINRA panel and this Court could reach irreconcilable factual findings potentially affecting credibility determinations, damages calculations, and legal conclusions would undermine the orderly administration of justice and the parties’ ability to rely on judicial decisions. The claim splitting doctrine exists precisely to protect Defendants from such prejudice. Plaintiff’s strategic choice to fragment her claims and compel litigation on multiple fronts, after two years of proceedings in this Court, is exactly the type of gamesmanship that produces irreparable harm.

## IV. <u>**Plaintiffs’ Fee Request Should be Summarily Denied.**</u>

For these reasons, Defendants’ motion is meritorious and certainly advanced in good faith.

Dated: June 29, 2026

LEERINK PARTNERS LLC, JEFFREY LEERINK, and DANIEL DUBIN

By Their Attorneys,

/s/ Christian A. Garcia

Michael L. Rosen (BBO # 559954)
Christian A. Garcia (BBO #703433)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: 617 832 1000
Facsimile: 617 832 7000
mrosen@foleyhoag.com
cgarcia@foleyhoag.com

**CERTIFICATE OF SERVICE**

I, Christian A. Garcia, hereby certify that a copy of the foregoing document was served by electronic means through the CM/ECF filing system, concurrent with the filing of this document on the 29th day of June 2026 to:

Philip J. Gordon, Esq.
Benjamin Flam, Esq.
Gordon Law Group, LLP
585 Boylston Street
Boston, MA 02116
(617) 536-1800
pgordon@gordonllp.com
bflam@gordonllp.com

/s/ Christian A. Garcia
Christian A. Garcia